730 So.2d 1203 (1996)
Charles Randall STEWART
v.
STATE.
CR-90-0415.
Court of Criminal Appeals of Alabama.
Opinion on Second Return to Remand March 22, 1996.
Opinion on Third Return to Remand September 26, 1997.
Rehearing Denied November 14, 1997.
*1208 Randall S. Susskind, Montgomery (on return to remand; appeared May 9, 1995); and Steve Giddens, Talladega (appointed May 2, 1996), for appellant.
Jeff Sessions and Bill Pryor, attys. gen.; Sandra Stewart, deputy atty. gen.; and Gail Ingram Hampton and Lindy Beale, asst. attys. gen., for appellee (on return to remand).

On Second Return to Remand
TAYLOR, Presiding Judge.
The appellant, Charles Randall Stewart, was convicted of murder, made capital because the murder was committed during the course of a burglary and a kidnapping, see  13A-5-40(1) and  13A-5-40(4), Code of Alabama 1975. By a vote of 10 to 2, the jury recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution. On appeal, we initially remanded this case to the Circuit Court for Talladega County so that that court could vacate four of the counts of capital murder and hold a hearing on the appellant's allegations concerning one of the jurors. See Stewart v. State, 601 So.2d 491 (Ala.Cr.App.1992). The trial court complied with our directions, vacated four counts, and found no juror bias. We affirmed the conviction and the sentence of death on return to remand. Stewart v. State, 659 So.2d 120 (Ala.Cr.App.1992). The Alabama Supreme Court affirmed the appellant's conviction but vacated the sentence and ordered a new penalty phase hearing. Ex parte Stewart, 659 So.2d 122 (Ala.1993). After remand from the Alabama Supreme Court, we remanded the case to the Circuit Court for Talladega County so that that court could hold a new sentencing hearing. Stewart v. State, 659 So.2d 129 (Ala.Cr.App.1994). This case is now on return to remand to this court after the penalty phase hearing was held in response to our instruction.

I
The appellant initially contends that the trial court's instructions to the jury in the penalty phase were flawed and that giving those instructions was reversible error because they failed to instruct the jury that the aggravating circumstances had to outweigh the mitigating circumstances before it could vote to impose the death penalty.
*1209 Initially, we note that there was no objection to this issue raised to the trial court. However, because this is a case involving the death penalty, this court is obliged by Rule 45A, Ala.R.App.P., to apply the plain error doctrine. This rule states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
The trial court gave the following instructions to the jury at the penalty phase:
"The law of this state provides that the punishment for a capital offense for which this defendant has been convicted is either death by electrocution or life imprisonment without eligibility for parole. The law also provides that which of these two punishments should be imposed upon the Defendant depends upon whether any aggravating circumstances exist. And I will tell you at this time the State has already proved aggravating circumstances by the verdict in the case. So, we are not concerned with that point of law.
"As a matter of fact, the trial jury convicted the Defendant of two offenses which constitute aggravating circumstances. One was murder while committing burglary in the first degree, and murder while committing kidnapping in the first degree. So, the State has already proven two aggravating circumstances in this case.
"[It has] offered proof of another aggravating circumstance, which [it has] to prove beyond a reasonable doubt and to a moral certainty, and that's the other offense. But these two were proven by the verdict in the case.
"A mitigating circumstance is any circumstance that indicates or tends to indicate that the Defendant should be sentenced to life imprisonment without parole instead of death.
"The issue at this sentence hearing then concerns circumstances of aggravation and circumstances of mitigation, and you can consider and weigh [them] against each other in deciding what the proper punishment in this case is to be.
"In making your recommendation to the Court what the punishment should be, you must determine whether any aggravating circumstances exist. And, if so, you must determine whether any mitigating circumstances exist. In making your determination concerning the existence of aggravating and mitigating circumstances, you should consider the evidence at this sentence hearing that we have just had.
"The law of the state provides a list of the aggravating circumstances which may be considered by a jury in recommending punishment, if the jury is convinced beyond a reasonable doubt and to a moral certainty from the evidence that one or more or any of the ... aggravating circumstances exist in this case. The same definition I gave you concerning reasonable doubt applies in this matter. But I told you it is a matter of law in this case that they've already proved two aggravating circumstances.
"If the jury is not convinced beyond a reasonable doubt based upon the evidence that one or more such aggravating circumstances exist, then the jury must recommend punishment of life imprisonment without parole. We are not concerned with that because aggravating circumstances have already been proven in this case.
"The law provides a list of aggravating circumstances, and that list has eight statutory aggravating circumstances. And I have explained to you the two that have already been proven in this case. That's the killing while committing a burglary in the first degree and killing while kidnapping.
"Now, we go to the question of mitigating circumstances. The law has set them out as follows, and I will just read them out of the Code rather than off my old charge....
"The defendant does not have to disprove anything about an aggravating circumstance. *1210 The burden is solely upon the State to prove such circumstances beyond a reasonable doubt, and I have explained to you what a reasonable doubt is. The reasonable doubt about an aggravating circumstance may arise from all of the evidence or from any part of the evidence.
"You may not consider any aggravating circumstances other than the circumstances that you have been instructed about, and you may not consider an aggravating circumstance unless you are convinced beyond a reasonable doubt by the evidence in the case [of] the existence of the aggravating circumstance.
"Now, the law of this State provides a list of some of the mitigating circumstances that I have just read to you, and I have read the whole list of them to you. In this case there was no accomplice designated. So as I told you, we are not concerned with that.
"A mitigating circumstance does not have to be included in the list that I have read to you in order for it to be considered by you. In addition, the mitigating circumstances that I have listed for you, enumerated previously and specified, mitigating circumstances shall include any aspect of a defendant's character or record or any of the circumstances of the offense that the defendant offers as a basis for a sentence of life. A mitigating circumstance considered by you would be based on the evidence you have heard from the witness stand here.
"When the factual existence of an offered mitigating circumstance is in dispute, the State shall have the burden of disproving the facts or existence of the circumstances by a preponderance of the evidence. The burden of disproving it by a preponderance of the evidence means that you are to consider that the mitigating circumstance does exist unless, taking the evidence as a whole, it is more likely than not that the mitigating circumstance does not exist.
"Therefore, if there is a factual dispute over the existence of a mitigating circumstance, then you would find and consider that the mitigating circumstance exists, unless you find the evidence is such that it is more likely than not that the mitigating circumstance does not exist. Only the aggravating circumstance must be beyond a reasonable doubt, and as I have stated many times, the burden is on the state to convince you from the evidence beyond a reasonable doubt and to a moral certainty that an aggravating circumstance did exist.
"In reaching your findings concerning the aggravating and mitigating circumstances in this case and in determining what to recommend that the punishment in this case should be, you must avoid any influence of passion, prejudice, or any other arbitrary factor. Your deliberation of the verdict should be based upon the evidence that you have seen and heard and the law in which I am instructing you at this time. There is no room for influence of passion, prejudice, or other arbitrary factors....
"The process of weighing mitigating and aggravating circumstances against each other to determine the proper punishment is not a mechanical process. Your weighing of the circumstances against each other should not consist of merely adding up the number of aggravating circumstances and comparing that number to the total number mitigating circumstances.
"The law of this state recognizes that it is possible in at least some situations that one or a few aggravating circumstances might outweigh a large number of mitigating circumstances.
"The law of this state also recognizes that it is possible in at least some situations that a larger number of aggravating circumstances may be outweighed by one or a few mitigating circumstances.
"In other words, the law contemplates that different circumstances may be given different weights or values by you in determining the sentence in a case. And you, the jury, are to decide what weight or value is to be given to the particular circumstances in determining the sentence in light of all the circumstances in the case. You must do so in the process of weighing *1211 the aggravating circumstances against the mitigating circumstances."
(R. 527-35)
In Alabama, in order to recommend that a defendant be sentenced to death, the jury must be instructed that the aggravating circumstances must "outweigh" the mitigating circumstances. "If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death."  13A-5-46(e)(3), Code of Alabama 1975. The aggravating circumstances do not have to outweigh the mitigating ones to any certain degree. Williams v. State, 601 So.2d 1062 (Ala.Cr. App.1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). The aggravating circumstances must simply outweigh the mitigating ones. See also Morrison v. State, 500 So.2d 36 (Ala.Cr.App.1985), aff'd, 500 So.2d 57 (Ala.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).
The trial court in this case did not instruct the jury concerning the process of weighing the aggravating and the mitigating circumstances against each other. The court did instruct the jury concerning how it was to determine the existence of any aggravating and mitigating circumstances. However, the court gave the jury no direction as to how to apply these circumstances once they were proven. The court failed to instruct the jury that in order to vote for the death sentence the aggravating circumstances must be shown to outweigh the mitigating ones. We note that the judgment in this case was previously reversed by the Alabama Supreme Court because of the trial court's jury instructions in the penalty phase. Ex parte Stewart, 659 So.2d 122 (Ala.1993).
It is the preferred practice to use the pattern jury instruction contained in the Alabama Pattern Jury Instructions: Criminal, "Pattern Jury Instruction for Use in the Penalty Phase of a Capital Case." This instruction reads in part:
"The law of this state provides that the punishment for the capital offense for which you have convicted this defendant is either death by electrocution or life imprisonment without eligibility for parole. The law also provides that which of those two punishments should be imposed upon the defendant depends on whether any aggravating circumstances exist and, if so, whether the aggravating circumstances outweigh the mitigating circumstances....
". . . .
"However, if after a full and fair consideration of all the evidence in this case, you determine that the mitigating circumstances outweigh any aggravating circumstance(s) that exist ... your verdict would be to recommend punishment of life imprisonment without parole."
(Emphasis added.)
The instruction given by the trial court in this case omitted the most fundamental consideration at the penalty phase and gave the jury no guidance as to the weighing process to be used in this phase of a capital murder trial. We are compelled to hold that the trial court erred to reversal in its conduct of the penalty phase of the proceedings because of this omission.

II
The appellant further contends that the trial court's instructions were flawed because the court instructed the jury that two aggravating circumstances were already found to exist in that the appellant had been convicted of murder during a burglary and a kidnapping. The appellant specifically cites  13A-5-49, which lists the aggravating circumstances. He contends that  13A-5-49(4) is only one aggravating circumstance and the court's instruction was erroneous because it told the jury that two aggravating circumstances had been proven in this case.
Section 13A-5-49(4) reads: "The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping." (Emphasis added.)
*1212 This issue has never been specifically addressed in Alabama. We hold that the aggravating circumstance enumerated in  13A-5-49(4) may apply more than once if the accused murders another while committing any variation of the four enumerated felonies contained in  13A-5-49(4), Code of Alabama 1975. The appellant committed the murder during the course of committing two felonies: burglary and kidnapping. The fact that  13A-5-49(4) lists four different felonies under the single heading of aggravating circumstances, does not mean that this circumstance could be applied only once in any given case. To hold otherwise would be to say that a person could commit a murder during the course of committing any number of the felonies enumerated in  13A-5-49(4) and face no additional consequences at the penalty phase and in fact be considered to have committed only one of the felonies contained in this section. This was not the intent of the legislature. The legislature's use of the words or in the above section supports this holding.
Furthermore,  13A-5-48 states:
"The process described in Sections 13A-5-46(e)(2), 13A-5-46(e)(3) and Section 13A-5-47(e) of weighing the aggravating and mitigating circumstances to determine the sentence shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison. Instead, it shall be defined to mean a process by which circumstances relevant to sentence are marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances is an individual case is life imprisonment without parole or death."
(Emphasis added.) Our conclusion is further supported by the above Code section, which states that the weighing of the aggravating and the mitigating circumstances is not a mere tallying of numerical numbers and comparing those numbers to see which is greater.
Moreover, this court in Land v. State, 678 So.2d 201, 223 (Ala.Cr.App.1995), though not specifically ruling on this issue stated: "The trial court found the existence of two aggravating circumstances: `that the capital offenses were committed while the defendant was engaged ... in the commission of ... burglary [and] kidnapping.' Ala.Code 1975,  13A-5-49(4)." The same felonies enumerated above, burglary and kidnapping, are present in this case.
The court lawfully instructed the jury that two aggravating circumstances had been proven by the jury's finding that the murder occurred during the course of a burglary and during the course of a kidnapping.
For the reasons discussed in Part I of this opinion, the judgment as to sentencing is reversed and the cause remanded to the Circuit Court for Talladega County for a new penalty phase hearing. Not only must the trial court hold a new penalty phase hearing, the court must also consider its sentence after considering the advisory opinion issued by the jury at the new penalty hearing. Due return should be filed in this court no later than 120 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
ALL THE JUDGES CONCUR.

On 3d Return to Remand
BASCHAB, Judge.
The appellant, Charles Randall Stewart, was convicted of six counts of murder for the death of Betty Sue Lang, his ex-wife. Of the six counts, four were made capital because the murder was committed during the course of a burglary and two were made capital because the murder was committed during a kidnapping. See  13A-5-40(a)(1) and  13A-5-40(a)(4), Ala.Code 1975. The appellant was sentenced to death by electrocution. On appeal, we remanded this case to the Circuit Court of Talladega County so that that court could vacate four counts of capital murder (three counts based on the burglary and one count based on the kidnapping) and hold a hearing on the appellant's allegations concerning one of the jurors. See Stewart v. State, 601 So.2d 491 (Ala.Cr.App.1992). The trial court complied with our directions, vacated four counts, and found no juror bias. We affirmed the conviction and the sentence of death on return to remand. Stewart v. *1213 State, 659 So.2d 120 (Ala.Cr.App.1992). The Alabama Supreme Court affirmed the appellant's conviction but vacated the sentence and ordered a new penalty phase hearing. Ex parte Stewart, 659 So.2d 122 (Ala.1993). We remanded the case to the Circuit Court of Talladega County for a new sentencing hearing. Stewart v. State, 659 So.2d 129 (Ala.Cr.App.1994). The trial court held another penalty phase hearing, but failed to instruct the jurors properly as to the process for weighing aggravating and mitigating circumstances. Accordingly, we again remanded the case to the Circuit Court of Talladega County so that that court could hold another sentencing hearing. Stewart v. State, 730 So.2d 1203 (Ala.Cr.App.1996). The trial court held a third penalty phase hearing, and this case is now before this court on return to remand following that third sentencing hearing. By a vote of 12-0, the jury recommended the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The appellant raises several issues on appeal to which he did not object during the sentencing hearing. Although a failure to object will not bar our review of an issue in a case involving the death penalty, it will weigh against any claim of prejudice. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). Rule 45A, Ala. R.App. P., states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review ... whenever such error has or probably has adversely affected the substantial right of the appellant."
"[This] plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).

I
The appellant's first argument is that the trial judge improperly instructed the jury at the sentencing phase that the State had already proven, by way of his conviction for burglary-murder, one aggravating circumstance. As grounds for his argument, the appellant asserts that the decision of the Alabama Supreme Court in Ex parte Gentry, 689 So.2d 916 (Ala.1996), renders his burglary-murder conviction invalid. Specifically, he argues that the jury in the guilt phase was instructed that it could find him guilty of burglary-murder if he had either "entered unlawfully" or "remained unlawfully" in the victim's mobile home. He argues that it is not apparent from the record which of the two alternative grounds the jury relied upon in finding him guilty of burglary-murder and that, under Ex parte Gentry, if it had convicted him based upon the "remained unlawfully" alternative, the conviction would have been invalid. Accordingly, the appellant argues that the trial court improperly instructed the jury during the sentencing hearing that the State had already proven the burglary-murder aggravating circumstance as a matter of law.
The appellant's contentions are without merit because the facts upon which the decision in Ex parte Gentry is based are distinguishable from the facts in this case. In Ex parte Gentry, because the appellant had a key to the victim's apartment and frequently used it to enter her apartment, his initial entry into the victim's apartment was lawful. Therefore, the State proceeded on the theory that the appellant, although he had entered lawfully, "remained unlawfully" in the victim's apartment when she implicitly revoked her consent to his being there and was thus guilty of committing murder during a burglary. In instructing the jury for purposes of determining whether the appellant had committed a burglary, the trial court told the jurors that "the fact that the victim had terminated the defendant's license or privilege to be present in the apartment can be inferred from the circumstances that a struggle took place." 689 So.2d at 918. In reviewing the case, the Alabama Supreme Court noted that "the crime of `burglary' is *1214 an offense separate from the crime one intends to commit while in the building. Thus, `remaining unlawfully' must be proved by some evidence other than evidence that the defendant committed a crime while in the building." 689 So.2d at 918. The court found that there was no evidence of a burglary in that case and stated that "[t]here was no separate crime of burglary simply because one could infer that she realized he was attacking her and therefore may or must have `revoked his privilege to remain.'" 689 So.2d at 921. Accordingly, the Alabama Supreme Court held that the trial court erred when it instructed the jury that it could infer from the fact that a struggle had taken place that the appellant's license or privilege to be in the apartment had been terminated. 689 So.2d at 921.
The present case is distinguishable from Ex parte Gentry because there was evidence of burglary and the trial court's jury instruction concerning burglary during the guilt phase of this case was substantially different from the instruction given in Ex parte Gentry. Section 13A-7-5(a), Ala.Code 1975, provides as follows:
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
"(2) Causes physical injury to any person who is not a participant in the crime; or
"(3) Uses or threatens the immediate use of a dangerous instrument."
In instructing the jury regarding Count One of the indictment,[1] the trial court stated as follows:
"The first count in the indictment charges the Defendant that he did intentionally cause the death of Betty Sue Lang by shooting her with a gun; to wit, a pistol, caused the death during the time that he knowingly and unlawfully entered and remained unlawfully in the dwelling of Betty Sue Lang with intent to commit the crime of assault, and at which time he was armed with a deadly weapon."
There was also testimony during the both the guilt phase trial and the penalty phase trial from the victim's neighbor, Aubrey Benefield, that the appellant did not knock on the door but that he "[j]arred the door open and went on in." In addition, the appellant and victim were no longer married, and the victim was living in the mobile home with her new husband. The appellant did not have permission to enter the victim's mobile home; thus, he entered it unlawfully. Furthermore, there is no indication that he was given permission to remain in the mobile home after he entered it unlawfully. Rather, the victim's son testified that he entered the mobile home after the appellant had entered it and saw blood on his mother's body. Also, the victim told her son to call the police, indicating that she did not want the appellant there. Just as the Alabama Supreme Court stated in Ex parte Gentry that we cannot assume from the ensuing struggle between the appellant and the victim that the appellant's permission to be in the dwelling was revoked, there is no basis in this case for assuming or inferring that the appellant was given permission to remain in the mobile home after he entered it unlawfully and assaulted the victim. Additionally, the appellant admitted that he assaulted the victim by pistol-whipping her while they were inside the mobile home. Clearly, there is evidence of burglary, apart from the evidence of the murder, because the appellant unlawfully entered and unlawfully remained in the victim's residence and he assaulted and caused physical injury to the victim before he took her outside and murdered her. Thus, the trial court did not err in instructing the jury that it could find the appellant guilty of committing a murder during a burglary if it found that the appellant *1215 "knowingly and unlawfully entered and remained unlawfully in" the victim's dwelling.
Contrary to the appellant's contentions, there is no evidence that the jury was given the option of convicting him based on either of the alternative bases that he "entered unlawfully" or that he "remained unlawfully." Under the instruction given by the trial court, the jury could have convicted the appellant only if it believed that the appellant both entered the mobile home unlawfully and remained in the mobile home unlawfully. Based upon the jury's guilty verdict, it appears that the jury believed that the appellant did both enter the mobile home unlawfully and remain there unlawfully. Thus, the appellant's argument that his burglary-murder conviction is not valid based on Ex parte Gentry is without merit. It follows then that the trial court during the sentencing phase did not err in instructing the jury that the State had proved the burglary-murder aggravating circumstance as a matter of law during the guilt phase.

II
The appellant's second contention is that the trial court erred during sentencing when it allowed the jury to separate over his objection. He relies on Rule 19.3(a), Ala. R.Crim. P., which became effective on January 1, 1991, and which provides as follows:
"(a) Separation of Jurors in Capital Trials.
"(1) In any prosecution for a capital felony, upon the consent in open court of the defendant, defendant's counsel, and the district attorney, the trial court, in its discretion, may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not.
"(2) A separation of the jury so permitted under Rule 19.3(a) shall create a prima facie presumption that the accused was not prejudiced by reason of the separation.
"(3) All discussions among the parties and the trial court concerning whether there will be a separation shall take place outside the hearing of the jury, and the jury shall not be informed which party, if any, requested or objected to sequestration or separation."
The State asserts that the trial court did not err and relies on  12-16-9, Ala.Code 1975, as amended effective June 15, 1995, which provides as follows:
"In the prosecution of any felony case the trial court in its discretion may permit the jury hearing the case to separate during the pendency of the trial. The court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury, and the jury shall not be informed which party, if any, requested separation or sequestration."
Before it was revised,  12-16-9, Ala.Code 1975, provided:
"(a) If the accused and his counsel and also the prosecuting attorney, in any prosecution for felony, whether capital or noncapital, consent thereto in open court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not. A separation so permitted shall not create a presumption of prejudice to that accused, but on the contrary it shall be prima facie presumed that the accused was not prejudiced by reason of the separation of the jury.
"(b) It shall be improper for the trial court to ask the accused, counsel for the accused or the prosecuting attorney, in the hearing of the jury, whether he or they will consent to a separation of the jury pending the trial.
"(c) It shall be improper for the accused, counsel for the accused or the prosecuting attorney to state to the trial court in the hearing of the jury that he or they consent to a separation of the jury pending the trial.
"(d) In the prosecution of any noncapital felony the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial."
The appellant correctly asserts that jury separation is a procedural issue and that *1216 procedural rules promulgated by the Alabama Supreme Court generally govern over statutory provisions. Prince v. State, 623 So.2d 355 (Ala.Cr.App.1992);  12-1-1, Ala. Code 1975. The appellant also correctly asserts that "when the Legislature gives the court the power to make rules and the court acts, the rules became of `legislative origin in substance.'" Holsemback v. State, 443 So.2d 1371 (Ala.Cr.App.1983) (quoting Ex parte Leeth Nat'l. Bank, 251 Ala. 498, 38 So.2d 1 (1948)). However,  6.11 of Amendment 328 to the Constitution of Alabama of 1901 provides as follows:
"The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."
Thus, although the legislature gave the Alabama Supreme Court power to promulgate rules governing court practice and procedure, it retains the authority to change those rules by a "general act of statewide application."
Rule 19.3, which in substance is a legislative act, covers the separation procedure for both capital and noncapital felony cases. We presume that, when enacting a statute, the legislature has full knowledge of and information about prior and existing law and legislation regarding a particular subject matter. State v. Thomas, 611 So.2d 472 (Ala.Cr.App.1992); Ex parte Love, 513 So.2d 24 (Ala.1987); Roberts v. State, 482 So.2d 1293 (Ala.Cr.App.1985). Therefore, we may presume that the legislature was aware of the provisions of Rule 19.3 when it enacted  12-16-9. We also presume that the legislature does not enact meaningless, vain, or futile statutes. Langham v. State, 662 So.2d 1201 (Ala.Cr.App.1994); Sturgeon v. City of Vestavia Hills, 599 So.2d 92 (Ala.Cr.App. 1992); Powers v. State, 591 So.2d 587 (Ala. Cr.App.1991). Because the provisions of the former  12-16-9 are substantially similar to Rule 19.3, the legislature must have intended to change the existing law and depart from the prior law. Sheffield v. State, 708 So.2d 899 (Ala.Cr.App.1997). The 1995 revision of  12-16-9 by the legislature eliminated the distinction formerly made between capital and noncapital felony trials. The statute now provides that a trial court may, in its discretion, allow the jury to separate in "any felony case." Capital cases are felony cases. We presume the legislature knows the meaning of words it uses in enacting legislation. Ex parte Jackson, 614 So.2d 405 (Ala.1993). If the legislature had intended for the statute to apply only to noncapital felonies, it knew how to make it do so. For example, it addressed noncapital felonies separately in the prior statute. Ex parte Jackson, 614 So.2d 405 (Ala.1993). However, in revising  12-16-9, the legislature chose the word "felony" and did not distinguish between capital and noncapital felonies as it previously had. It used a general word rather than a specific one. We presume that the legislature meant to cover all felonies because if it had wanted to be specific, it knew how to do so just as it did in the past. We will not add what the legislature chose to omit. Ex parte Jackson, 614 So.2d 405 (Ala.1993). Therefore, we will not interpret  12-16-9 to apply only to noncapital felonies as the appellant urges us to do.
We must attempt to construe the legislature's intent in revising  12-16-9. Generally, statutes covering the same or similar subject should be construed together to determine their meaning when possible. State v. Thomas, 611 So.2d 472 (Ala.Cr.App. 1992). However, the provisions of Rule 19.3 and  12-16-9 cannot be reconciled. The Alabama Supreme Court addressed an analogous situation as follows:
"This Court in Allgood v. Sloss-Sheffield Steel & Iron Co., 196 Ala. 500, 501, 71 So. 724 (1916) held:
"`"Where an amendment is made that changes the old law in its substantial provisions, it must, by a necessary implication, *1217 repeal the old law so far as they are in conflict. And where a new law, whether it be in the form of an amendment or otherwise, covers the whole subject-matter of the former, and is inconsistent with it, and evidently intended to supersede and take the place of it, it repeals the old law by implication."' (Citations omitted).
". . . .
"Repeal by implication is admittedly not a favored rule of statutory construction, but in State v. Bay Towing and Dredging Company, 265 Ala. 282, 289, 90 So.2d 743, 749 (1956), we find:
"`In Alabama, the law governing implied repeals is well-settled and the cases on this point are singularly consistent. See 18 Ala.Dig., Statutes, Key 159 & 160. A concise statement of the rule is contained in City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162:
"`"Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. * * *"'
"`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. Ex parte Jones, 212 Ala. 259, 260, 102 So. 234 [(1924)]. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will.'"
Fletcher v. Tuscaloosa Federal Savings & Loan Association, 294 Ala. 173, 176-77, 314 So.2d 51, 54-55 (1975). See also State v. Thomas, 611 So.2d 472 (Ala.Cr.App.1992). Rule 19.3 was effective January 1, 1991, and the revised  12-16-9 was effective June 15, 1995. We conclude that  12-16-9 implicitly and effectively repeals Rule 19.3 to the extent that Rule 19.3 conflicts with that statute. Thus, the legislature has passed a general statute of statewide application which impliedly repeals the conflicting provisions of Rule 19.3. Section 12-16-9 authorizes a trial court, in its discretion, to allow a jury to separate in all trials, both capital and non-capital. Therefore, the trial court did not abuse its discretion in allowing the jurors to separate during the sentencing phase of the appellant's trial.

III.
The appellant's third argument is that the trial court's sentencing order violates Alabama law. In support thereof, the appellant cites six alleged deficiencies in the sentencing order.

A
The appellant first contends that the sentencing order is improper because the trial court failed to determine whether the aggravating circumstances outweighed the mitigating circumstances. In this regard, the trial court's order provides as follows:
"The Court finds that the conduct of the Defendant, Charles Randall Stewart, constituted a brutal, aggravated, merciless, and intentional killing of the victim, Betty Sue Lang. The Court further finds that the recommendation of the jury as to the punishment to be imposed was fully justified by the facts and circumstances of the case, together with the process of weighing the aggravating and mitigating circumstances.
"The Court further finds that the sentence of death was not recommended by the jury under the influence of passion, prejudice, or any other arbitrary factor."
In its charge to the jury, the trial court properly instructed the jury concerning the weighing of mitigating and aggravating circumstances as follows:
"Now the law in this State also provides that the punishment for the capital offense for which this defendant has been convicted by another jury is either death by electrocution or life in prison without eligibility for parole. The law also provides which of those two punishments should be imposed upon the defendant depends on whether any aggravating circumstance exist and if so, whether the aggravating circumstances *1218 outweigh the mitigating circumstances. However, if after a full and fair consideration of all the evidence in the case, you determine that the mitigating circumstances outweigh any aggravating circumstances that exist, your verdict would be to recommend punishment of life in prison without parole."
(R. 636-37).
"The process of weighing mitigating and aggravating circumstances against each other to determine the proper punishment is not a mechanical process. Your weighing of the circumstances against each other should not consist of merely adding up the number of aggravating circumstances and comparing that number to the total number of mitigating circumstances. The law of the State recognizes that is possible and in at least some situations that one or a few aggravating circumstances might outweigh a large number of mitigating circumstances. The law of the State also recognizes that it is possible that in some situations that the larger number of aggravating circumstances may be outweighed by one or few mitigating circumstances. In other words, the law contemplates that different circumstances may be given weights or values by you in determining the sentence in the case. And you the jury are to decide what weight and value is to be given to the particular circumstance in determining the sentence in light of all the circumstances in the case. You must do that in the process of weighing the aggravating circumstances against mitigating circumstances. And again I will charge you the law of this State provides the punishment for the capital offense for which the defendant has been convicted is either death by electrocution or life of imprisonment without eligibility for parole. The law also provides that which of those two punishments should be imposed upon the defendant depends on whether any aggravating circumstances exist and if so, whether the aggravating circumstances outweigh the mitigating circumstances. However, if after a full and fair consideration of all the evidence in the case, you determine that the mitigating circumstances outweigh any aggravating circumstances that exist, your verdict would be to recommend punishment for life imprisonment without parole."
(R. 646-48).
Reading the sentencing order logically, it is clear that the trial court made findings regarding the presence of aggravating circumstances and mitigating circumstances. Specifically, the trial court found that two aggravating circumstances existed and that no mitigating circumstances existed. Finally, the trial court then considered the facts of the case and, after weighing the aggravating circumstances against the absence of mitigating circumstances, implicitly determined that the aggravating circumstances outweighed the nonexistent mitigating circumstances. In particular, the trial court stated that "the punishment to be imposed was fully justified by the facts and circumstances of the case, together with the process of weighing the aggravating and mitigating circumstances." We presume that the trial court followed the instructions it gave to the jury regarding weighing the aggravating and mitigating circumstances. Ex parte Slaton, 680 So.2d 909 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Rutledge v. State, 523 So.2d 1087 (Ala.Cr.App.1987), rev'd, 523 So.2d 1118 (Ala.1988); Ex parte Harrell, 470 So.2d 1309, 1318 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). We further presume the trial court knew the law and applied it in making its decision. Slaton, supra; Hutcherson v. State, 677 So.2d 1174 (Ala.Cr.App. 1994), rev'd, 677 So.2d 1205 (Ala.1996); Harrell, supra. There is no evidence that the trial court engaged in presumptive sentencing. Fortenberry v. State, 545 So.2d 129, 144 (Ala.Cr.App.1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). Rather, the evidence indicates that the trial court determined that the two aggravating circumstances were sufficient to warrant the death penalty and that there was no evidence of mitigating circumstances in this case. Thus, the appellant's argument is without merit.

B
The appellant also contends that the sentencing order violates Alabama law *1219 because the trial court failed to find the existence or nonexistence of each aggravating circumstance enumerated in  13A-5-49, Ala.Code 1975. In its order, the trial court found as follows with respect to aggravating circumstances:
"On remand the verdict of guilt was affirmed, and the Court was ordered to hold a new sentencing hearing. The verdict of the Court on the 30th day of November, 1990, proved beyond a reasonable doubt and to a moral certainty two aggravating circumstances as set out in Section 13A-5-40(a)(4) and as set out in Section 13A-5-40(a)(1) of the Code of Alabama, 1975, as amended."
Thus, the trial court did not "enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49" as required by  13A-5-47, Ala.Code, 1975. Nevertheless, we find this omission to be harmless.
"While the trial court's sentencing order is defective, the errors are not so egregious or substantial as to require a new sentencing order. `The sole purpose of requiring that the trial judge, as the sentencing authority, make a written finding of the aggravating circumstance is to provide for appellate review of the sentence of death.' Ex parte Kyzer, 399 So.2d 330, 338 (Ala.1981). `[T]he harmless error rule does apply in capital cases at the sentence hearing.' Ex parte Whisenhant, 482 So.2d 1241, 1244 (Ala.1983). `As long as the trial judge properly exercises his discretion and the facts indicating the death penalty are "so clear and convincing that virtually no reasonable person could differ," a harmless error analysis can be used.' Baldwin v. State, 456 So.2d 117, 126 (Ala.Cr.App. 1983), affirmed, Ex parte Baldwin, 456 So.2d 129, 140 (Ala.1984). See also Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Thompson v. State, 503 So.2d 871, 881 (Ala.Cr.App. 1986), affirmed, Ex parte Thompson, 503 So.2d 887 (Ala.), cert. denied, Thompson v. Alabama, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987). We emphasize that `the safer practice would have been for the trial judge to simply follow the verbiage of the statute in negating aggravating circumstances.' Berard v. State, 402 So.2d 1044, 1051 (Ala.Cr.App.1980)."
Fortenberry v. State, 545 So.2d 129, 144 (Ala. Cr.App.1988).
There is nothing to indicate that the trial court refused or failed to consider any aggravating circumstances. Furthermore, this court has before it a sufficient basis for reviewing the appellant's death sentence. Slaton v. State, 680 So.2d 879 (Ala.Cr.App.1995), aff'd, 680 So.2d 909 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Fortenberry, supra; Kyzer, supra. Therefore, the appellant's argument is without merit.

C
The appellant also contends that the sentencing order violates Alabama law because the trial court failed to enter written findings of facts summarizing the crime. In its order, the trial court stated as follows:
"Since the case was affirmed on the guilt stage of the case, the Court did not deem it necessary to have a `Finding of Fact By the Court from the Evidence and Testimony Presented During the Guilt Phase of the Trial Summarizing the Crime and the Defendant's Actions Therein.' If such is deemed to be necessary, the Court adopts its previous finding in that regard to be included for the consideration of the Appellate Courts, with the exception that four counts on which the Defendant was previously convicted were vacated pursuant to the opinion of the Court of Criminal Appeals released on May 1, 1992, because of the duplicity and double jeopardy; these being three counts of Capital Murder during the course of a Burglary as defined in Section 13A-5-40(a)(4), and one count of Capital Murder committed during the course of Kidnapping in the First Degree as defined in Section 13A-5-40(a)(1).
"At the last sentence hearing the jury was advised that the Defendant has previously been convicted of only two counts of Capital Murder, Counts One and Six of the indictment."
*1220 The judgment resulting from the guilt phase of this case has previously been affirmed, and the trial court previously made specific findings of fact summarizing the crime and the appellant's participation in it. Stewart v. State, 659 So.2d 129 (Ala.Cr.App. 1994); Ex parte Stewart, 659 So.2d 122 (Ala. 1993); Stewart v. State, 659 So.2d 120 (Ala. Cr.App.1992), aff'd in part, rev'd in part, 659 So.2d 122 (Ala.1993). This court has before it a sufficient record to review this case and the sentence of death. Slaton, supra; Fortenberry, supra; Kyzer, supra. Therefore, the trial court did not err to reversal in adopting its prior findings of fact summarizing the crime and the appellant's participation in it.

D
The appellant also contends that the sentencing order violates Alabama law because the trial court failed to consider mitigating evidence and failed to find that many mitigating circumstances existed. In addressing mitigating circumstances, the trial court's order states as follows:
"In regard to the mitigating circumstances as provided in Section 13A-5-51, the evidence reveals as follows:
"1. The Defendant did have a significant history of prior criminal activity having been convicted of at least one prior felony and having been involved in a great number of serious misdemeanors.
"2. The capital offenses were not committed while the Defendant was under the influence of extreme mental or emotional distress;
"3. The victim was not a participant in the Defendant's conduct nor did the victim consent to it;
"4. The Defendant did not have an accomplice in the commission of the crime.
"5. The Defendant did not act under extreme duress or under the substantial domination of another person.
"6. The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired.
"7. The age of the Defendant at the time of the crime was 37 years old.
"Under Section 13A-5-52, the Court has considered all of the relevant factors or lack of same set out therein which the Defendant offered as a basis for his sentence of life without parole instead of death, and all other relevant mitigating circumstances or the lack of same, including the fact that there was evidence that the Defendant had been drinking alcoholic beverages prior to his acts made the basis of the indictment; this being considered, the Court finds that the Defendant was not so intoxicated, that his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. The Court further finds that the Defendant's drinking of alcoholic beverages was voluntary and is to be considered under this section but does not constitute a statutory or nonstatutory mitigating circumstance and the Court so finds. The Court further finds as follows:
"The Defendant offered the testimony of three witnesses who testified in his behalf. The witnesses were:
"1. The Defendant himself testified in his own behalf.
"2. Marie Stewart, mother of the Defendant (testimony was read from last hearing).
"3. Pete Haisten, friend of the Defendant.
"It is the opinion of the Court, and the Court so finds that none of the witnesses offered by the Defendant proved a mitigating circumstance under Sections 13A-5-51 or 13A-5-52."
(R. 40-41).
From the sentencing order, it is clear that the appellant's claim that the trial court did not consider the evidence he offered as evidence of mitigating circumstances is without merit. Rather, the trial court specifically stated that it considered all evidence offered concerning statutory and nonstatutory mitigating circumstances even though it found that the appellant had not proven any statutory or nonstatutory mitigating circumstances. In fact, the trial court properly *1221 included its findings as to the nonexistence of each of the statutory mitigating circumstances, and it specifically addressed some of the mitigating evidence the appellant offered.
In compliance with Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978), and its progeny, the trial court allowed the appellant to present all of the mitigating evidence he wanted to present, and the trial court fully considered that evidence in imposing the sentence. The trial court did not err in finding that there was no mitigating evidence in this case. "While Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority." Ex parte Slaton, 680 So.2d at 924 (quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Cr.App.1989)). See also Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994); Ex parte Harrell, 470 So.2d 1309 (Ala.1985).
Trial judges are presumed to follow their own instructions, and they are presumed to know the law and to follow it in making their decisions. Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996)(citing Ex parte Harrell, 470 So.2d 1309, 1318 (Ala.1985)). The trial court specifically stated in its sentencing order that it had considered all of the mitigation evidence offered by the appellant. The appellant's claim that the trial court failed to consider his statutory and nonstatutory mitigating evidence is not supported by the record. The trial court clearly considered all the mitigation evidence the appellant offered, but found that none of it mitigated the crime.

E
The appellant also contends that the sentencing order violates Alabama law because the trial court improperly found the existence of the aggravating circumstance that the murder was committed during the commission of a burglary. Based upon our holding in Part I of this opinion, we find the appellant's argument to be without merit.

F
The appellant finally contends that the sentencing order violates Alabama law because the trial court considered an improper presentence investigation report. In particular, the appellant asserts that the probation officer who prepared the report made unauthorized findings with respect to aggravating and mitigating circumstances and included inadmissible hearsay in the report. The appellant did not raise this issue at trial. Therefore, we review it under the plain error standard.
Section 13A-5-47(b), Ala.Code 1975, provides for the use of a presentence investigation report:
"Before making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report. The report shall contain the information prescribed by law or court rule for felony cases generally and any additional information specified by the trial court. No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute. The report and any evidence submitted in connection with it shall be made part of the record in the case."
Section 13A-5-45(d) addresses the evidence to be used at the sentencing hearing[2]:
"Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in *1222 violation of the Constitution of the United States or the State of Alabama."
The appellant's argument that the trial court improperly considered the presentence report because the probation officer who prepared the report made unauthorized findings concerning aggravating and mitigating circumstances is without merit. The trial court's sentencing order shows that the trial court independently considered and weighed the evidence concerning aggravating circumstances and mitigating circumstances. In addition, the appellant's argument that the report contained improper hearsay evidence is also without merit. This court has previously held that "the [presentence investigation] report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under  13A-5-47, Code of Alabama, being specifically called for consideration by the trial court." Thompson v. State, 503 So.2d 871, 880 (Ala.Cr.App.1986), aff'd, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987). Therefore, applying the doctrine that the trial judge is presumed to disregard any inadmissible evidence and improper factors in sentencing, we find no plain error in the trial court's consideration of the presentence report. Sockwell v. State, 675 So.2d 4, 36 (Ala.Cr.App.1993), aff'd, 675 So.2d 38 (Ala.), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996). See also Lightbourne v. Dugger, 829 F.2d 1012 (11th Cir.1987), cert. denied, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); Whisenhant v. State, 555 So.2d 219, 229 (Ala.Crim.App.1988), aff'd, 555 So.2d 235 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).
We thus find all of the appellant's challenges to the sentencing order to be without merit. Considered individually and collectively, the alleged "technical errors" in the trial court's sentencing order did not injure the appellant. Fortenberry, 545 So.2d at 144-45.

IV
The appellant's fourth contention is that the trial judge denied him the right to introduce crucial mitigation evidence as to the circumstances of the crime and his mental state immediately before and during the crime. However, he fails to cite any specific instances where he was not allowed to present such evidence. Our review of the record indicates that this claim is without merit.
Before the hearing began and outside of the presence of the jury, the following occurred:
"MR. RUMSEY [prosecutor]: The other matter I had is the same motion in limine I made at the last trial and [the] one before it would be prior to going into it in the presence of the jury that the defendant had obtained the Court's permission to go into it with the presence of the jury any complaints he made to a third person, any agency concerning the child. Also, not go into it in the presence of the jury the complaints of the divorce filed except for the orders and such, but not the orders that were ex parte and also any statements that the defendant made to law enforcement. It is grounds for the motion. We just say it would be hearsay and we are just asking to obtain the Court's permission outside the presence of the jury before they come in.
"MR. GIDDENS [defense counsel]: Let me see if I got this straight. Nothing relative to any complaints he made to a third person or any agency or any statements to law enforcement; is that correct?
"MR. RUMSEY: Yes, and anything contained in the divorce file other than the court orders. I don't have any problem with the Court orders and stuff.
"MR. GIDDENS: I don't intend on doing that. I won't do that without taking it up with Your Honor first."
(R. 134-35). Also, before the defense presented its case, the following occurred, outside of the presence of the jury:
"MR. RUMSEY: Judge, we renew our motion in limine relative to the grounds that we previously stated which include any petitions filed or affidavits filed. We don't have any objections to any order of the Court, but as to any say a petition for change of custody where the defendant signed a verified complaint and the Judge *1223 grants a temporary order of custody, we would move in limine that that be taken outside the presence of the jury.
"MR. GIDDENS: Well, my intentions are for him to testify from the case summary, a petition was filed. I am not going into any points in the petition.
"MR. RUMSEY: That's fine.
"MR. GIDDENS: All I want is the case action summary filed, order granted, just chronological events so to speak.
"THE COURT: All right. We can take that in front of the jury.
"MR. RUMSEY: Yes, sir.
"THE COURT: All right. Bring them in."
(R. 444-45). Finally, just before the appellant testified, the following exchange occurred, outside of the presence of the jury:
"MR. GIDDENS: It is my intention in just a few minutes that the defendant will testify. And under the nonstatutory mitigation, I believe he would be entitled to offer reasons he filed petitions, reasons he asked for custody and any other matters pertaining to he and his ex-wife as offered under the nonstatutory mitigation provision, I think  13A-5-52 (sic), but I'm not sure.
"THE COURT:  13A-5 what?
"MR. GIDDENS: I think it's -52.
"MR. RUMSEY: You are talking about any other acts of the defendant's character or the facts of the case they may find in mitigation of the death sentence?
"MR. GIDDENS: Yes.
"MR. RUMSEY: Okay. Now, let's take it one at a time. You talking about you want to offer reasons relative to why he filed in the first petition and that is going to be the conversation at Hardee's?
"MR. GIDDENS: Right.
"MR. RUMSEY: All right. I did not object to it the first time. Now, what I do have a problem with is himÔÇöthat is whatÔÇöeven though the first time they never asked Mack [the appellant's son] about the conversation of telling his daddy when he was on the witness stand. But I did not object to it the first time, I don't have any objection to it now particularly in view of the fact that this is out of the jurisdiction. What I do have a problem about is the reasons he don't go to anything Mack told him, it goes to allegedly something he had heard somewhere else, out on the street or where ever, relative to Phillip [Lang, the victim's husband] and his child. Where ever he heard thatÔÇöI don't know where he heard it, but it would be subject to some type of subpoena.
"THE COURT: Limit it toÔÇöin addition to the statutory mitigating circumstances, shall include any aspects of a defendant's character or records and any circumstances of the offense, that is the offense itself, that the defendant offers as a basis for a sentence for life imprisonment or without parole instead of death and any other mitigating circumstances which the defendant offers as a bases for a sentence of life imprisonment without parole instead of death. Now, what is it you anticipate offering?
"MR. GIDDENS: Judge, what I anticipate offering is back in April, he files, Mr. Stewart, the defendant, filed for temporary custody and I intend on offering the reason he filed that. Before we had just gotten into there was a petition ordered and that is it, I intend on offering the reason why he filed. Then there is another petition filed in June. I intend on offering the reason he filed that, concerns that he had, problems that he had. And that there was a hearing he was not at for whatever reason and go into the fact of those two filed. And then the circumstances of the events, what happened prior to and at the day, the day she got killed as well.
"MR. RUMSEY: What are youÔÇöon each of the two petitions, I really don't know how that has anything to do with it, but what do you plan on offering on petition one?
"MR. GIDDENS: That Little Mack tells him that he'sÔÇöthat his mother was sleeping with a man. Actually in the bed with them and then he files a petition based on that.
"THE COURT: That was before she was married?

*1224 "MR. GIDDENS: Yes, sir.
"MR. RUMSEY: Anything else?
"MR. GIDDENS: On that petition, that isÔÇöthat would be it for the first petition.
"MR. RUMSEY: All right. The second petition.
"THE COURT: You don't have any problems with that?
"MR. RUMSEY: No, sir. Quite frankly, I don't think it is admissible but I'm not going to object to it.
"MR. GIDDENS: In the second petition he filed, there was a complaint made to DHR relative to the man that Mack referred to being in the bed, being Phillip Lang, DHR did an investigation. Mr. Stewart made a complaint with DHR. Actually took Mack to DHR to complain and then there was a petition filed. That is the basis of the second petition.
"MR. RUMSEY: That's the first one, isn't it?
"MR. GIDDENS: We are on the second petition that he filed.
"MR. RUMSEY: He was restricted in the first trial from going into it. But he blurted it out anyway. It was that he had beat his little girl.
"MR. GIDDENS: Well, I'm trying so that won't happen. That is why I'm taking it up now, so we are clear on what we can go into.
"MR. RUMSEY: Is there anything other than that?
"MR. GIDDENS: In the second petition, that is the basis for the second petition.
"MR. RUMSEY: That is all you are going to say, just those two things, that is why he filed them.
"MR. GIDDENS: Well, I lost my track.
"MR. RUMSEY: He filed the second because he had heard that Phillip had beat his [Phillip's] child.
"MR. GIDDENS: Right.
"MR. RUMSEY: And the first was based on the conversation he had with Little Mack at Hardee's and that his mother had been sleeping with another man and he was in the bed or something with them.
"MR. GIDDENS: That's right.
"MR. RUMSEY: And that is two things. I won't object to either one of them.
"MR. GIDDENS: Thank you.
"THE COURT: So, that is settled?
"MR. RUMSEY: Now, what I do have is Randy is a very good witness, he knows what to say and when to say it and that sort of thing. But all this stuff about him telling people told him that she is running around and claims that he had raped her and this kind of stuff, now that is what I'm objecting to because he was up there saying it last time and she is actually filing the complaint that he has raped her and we can't get into the fact that she has filed a complaint with the police department that he has raped her, but he is getting up there saying that what other people are telling him on the street, basically, and I object to that.
"MR. GIDDENS: I don't have any intentions of going into that.
"MR. RUMSEY: I understand that.
"THE COURT: All right. Don't volunteer anything like that. All right. I think we are readyÔÇö"
(R. 459-67).
From these excerpts, it appears that the appellant did not object to the State's motion in limine. Rather, the prosecutor and the defense attorney were able to agree concerning what each witness, including the circuit clerk and the appellant, would be allowed to testify to in relation to the custody dispute between the appellant and the victim, As a result, the appellant was allowed to testify in detail about why he filed each petition in which he sought custody of the parties' minor child. Specifically, he testified that the child had told him that the victim and her boyfriend were sleeping in the same bed with the child, and he testified that the victim's boyfriend had been accused of beating his daughter so harshly that she had to be hospitalized. He also testified that the victim was living with Phillip Lang before she and Lang were married. The appellant testified about the causes of the parties' divorce, including an alleged affair the victim had with Phillip Lang before the parties were divorced. He *1225 also gave detailed testimony about the custody battle over their son, including the numerous petitions that were filed, the hearings that were held, the orders that were entered, and the changes in custody that occurred immediately before the victim's murder. Finally, despite the State's objections and the trial court's orders, the appellant testified that Phillip Lang drove around with a pistol on the seat of his truck and told people he was going to blow the appellant's brains out. Clearly, the appellant was allowed to present ample mitigating evidence about the circumstances of the crime and his mental state prior to and during the crime. Thus, there was no Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978), violation in this regard.

V
The appellant's fifth argument is that the trial court committed reversible error in failing to remove a juror for cause. Specifically, the appellant argues that the trial court erred when it refused to strike prospective juror P.M. and forced him to use a peremptory strike to remove P.M. from the jury. The record shows the following with respect to P. M.:
"THE COURT: Do any of you believe you are disqualified because of anything I've read to you up to this point in time?
". . .
"(JUROR P.M. APPROACHES BENCH)
"JUROR P. M.: I was in Domestic Relations at the time, but I don't rememberÔÇö
"THE COURT: Okay. This is P.M. for the record. If you were selected to serve as a juror in this case, could you base your recommendation in this case on what comes to you from the witness chair and what the law is relative to the case? Can you do that?
"JUROR P. M.: Yes, sir.
"THE COURT: Okay.
". . . .
"MR. RUMSEY: There is alsoÔÇöone of the jurors asked BarryÔÇöhe can tell what was said. It was Thursday or Friday.
"MR. MATSON: Thursday evening or Friday evening.
"MR. RUMSEY: He didn't know she was a juror at the time.
"MR. MATSON: P.M. I was at the local grocery store here in Talladega. It was Friday evening. P.M. owns the restaurant just up the street and it's common for her or her son to ask me what's coming up so they can prepare to have additional help and plan if it's a big trial. They will just ask what's on the trial docket. I bumped into her and she asked me, which is common for her to do that and I said, `I think we'll be trying Randy Stewart,' and she said, `Oh really,' and I said `Yeah.' She said, `I think I recall something about that case. He's accused of shooting his wife.' That's the words she used. Before I could say anything, she said, `I'm on jury duty.' At which point I said, `I didn't know that. I can't talk to you any further about it.'
"THE COURT: She said she knew something about it. P.M. She said she could be fair and impartial. Do you want to do anything else in regard to that?
"MR. GIDDENS: No, I don't have any problem with that. I'm sure Mr. Matson did exactly what said he did."
(R. 20-27).
Following this exchange, the appellant did not object in any way to potential juror P.M. serving on the jury. Therefore, we must review this issue under the "plain error" rule of Rule 45A, Ala. R.App. P. After reviewing the record, we find that no reversible error occurred.
The appellant contends that P.M. should have been removed for cause because she knew something about the case, spoke to a prosecutor about the case, and worked in domestic relations at the time of the crime. However, she specifically indicated that she could be fair and impartial if chosen she was to be a juror in the case. Thus, there was no showing that she was biased against the appellant.
"To justify a challenge of a juror for cause, there must be a statutory ground ( 12-16-150, Code of Alabama 1975), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court. Nettles v. State, 435 So.2d *1226 146 (Ala.Cr.App.), aff'd, 435 So.2d 151 (Ala. 1983). The trial court's ruling on challenges for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Price v. State, 383 So.2d 884 (Ala.Cr.App.), cert. denied, 383 So.2d 888 (Ala.1980)."
Rutledge v. State, 523 So.2d 1087, 1107-08 (Ala.Cr.App.1987), rev'd, 523 So.2d 1118 (Ala. 1988).
In reviewing the facts of this case, applying the law regarding probable prejudice as set forth, we find no evidence that P.M. possessed an opinion or a bias so absolute or fixed as to bias the verdict. There is also no evidence in the record to show that she should have been dismissed on any statutory ground. The trial court acted within its discretion in refusing to resort to speculation about how P.M.'s alleged bias would have affected the verdict. P.M. never indicated an opinion about the appellant's guilt or innocence, and the trial court was apparently satisfied that P.M. would base her verdict solely on the evidence, regardless of what prior knowledge she had about the case. The trial judge was in the best position to evaluate the demeanor of the prospective juror and to "hear not only the words recorded by the court reporter but also the meaning actually conveyed by the responding prospective juror." Clark v. State, 443 So.2d 1287, 1289 (Ala.Cr.App.1983). We are not persuaded that the trial court clearly abused its discretion. See Heath v. State, 480 So.2d 26 (Ala.Cr.App.1985) (wherein the court held that the fact that a prospective juror had filed a disciplinary complaint against defense counsel did not constitute ground for challenge for cause). Therefore, we find no error in the trial court's ruling.

VI
The appellant's sixth argument is that the trial court improperly limited the jury's discretion to determine whether aggravating circumstances existed. Specifically, he argues that the use of his convictions for burglary and kidnapping both as elements of capital murder and as aggravating circumstances violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Alabama law. This practice is commonly referred to as "double counting" or "overlapping," and the argument the appellant makes is essentially a double jeopardy argument. Because the appellant merely makes bare allegations that his Sixth, Eighth and Fourteenth Amendment rights were violated, we will address only the Fifth Amendment argument.
The appellant did not object at trial to this "double counting." Thus, we must review this issue under the plain error standard.
Section 13A-5-50, Ala.Code 1975, provides, in pertinent part:
"The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
Section 13A-5-50 clearly provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is specified in  13A-5-49. Furthermore, this court has repeatedly held that the use of an element of capital murder as an aggravating circumstance does not implicate the Double Jeopardy Clause because it does not punish a defendant twice for the same offense. Burton v. State, 651 So.2d 641 (Ala. Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
"`This practice, known as "double counting" or "overlapping," has been upheld. Haney v. State, 603 So.2d 368 (Ala.Cr. App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); Kuenzel [v. State, 577 So.2d 474, 489 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991)].
"`Section 13A-5-50, Code of Alabama 1975, states, in part, as follows:
"`"The fact that a particular capital offense as defined in section 13A-5-40(a) *1227 necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
"`Clearly,  13A-5-50 provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in  13A-5-49. Further, this court has repeatedly held that the use of an element of capital murder in such a way does not, as the appellant argues, punish a defendant twice for the same offense. Kuenzel, supra; see also Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
"`"A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy."
"`Kuenzel, 577 So.2d at 488, quoting Fortenberry v. State, 545 So.2d 129, 142 (Ala.Cr.App.1988), aff'd, 545 So.2d 145 (Ala.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).'
"Burton, 651 So.2d at 657-58."
Hutcherson v. State, 677 So.2d 1174, 1201 (Ala.Cr.App.1994), rev'd, 677 So.2d 1205 (Ala. 1996).
Clearly, the appellant's argument is without merit.

VII
The appellant's seventh argument is that there were several errors in the jury instructions at his sentencing trial. He cites six alleged errors in the trial court's instructions to the jury. We note that the appellant did not object to the trial court's instructions at the sentencing hearing. In fact, defense counsel stated that he was satisfied with the instructions. Although this does not bar our review because this is a death penalty case, it will weigh against any claim of prejudice made by the appellant. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).

A
The appellant asserts that the trial court erred when it instructed the jury that the State did not need to prove the existence of aggravating circumstances beyond a reasonable doubt. He specifically contends that the trial court mischaracterized the stipulation in this case and thus erred by telling the jury that the State was not required to prove the aggravating circumstance beyond a reasonable doubt.
The record reflects the following concerning the stipulation:
"MR. RUMSEY: There was also a felony conviction that was offered in under an aggravating circumstance which would be a felony where it would be an aggravating circumstance, if the defendant had been convicted of the capital offense or the use or threat of violence to another person. I think it's a 1979 or 1980 flogging while masked. We had before introduced the certified copy by or either stipulated it inÔÇöcertified copy of the case showing that he wasÔÇöthat he pled guilty to a felony flogging while masked. And the elements of that section wasÔÇöit is not any longer a crime in Alabama today, but any person or persons who while masked or while the faces are concealed or partially concealed shall whip, flog or beat any person shall be guilty of a felony.
"So the question arises as to whether or not the State should offer proof to those elements to prove that it is a felony involving violence to the person. We will be glad to stipulate that it's a felony involving violence to the person or we will be glad to prove it, either one.
"MR. GIDDENS: I think it's previously been admitted twice. I think the last time it was basically a stipulation to it.
"MR. RUMSEY: Yes, and that's what I'm asking if we can stipulate to it or if we need to prove it.
"MR. GIDDENS: No, that's not necessary.

*1228 "THE COURT: And you stipulate that it falls within this category.
"MR. GIDDENS: Yes, sir.
"THE COURT: All right. Thank you. Subdivision 2 section 13A-5-49?
"MR. RUMSEY: Yes, sir, I believe.
"THE COURT: No capital offense or felony to the person?
"MR. RUMSEY: Well, I thought they would want to stipulate to it because it's notÔÇöif you put the testimony on, it's bad, I mean so we will stipulate that the flogging while masked is a crime of violence to the person and that it was a felony.
"THE COURT: All right."
(R. 132-34).
In its charge to the jury, the trial court stated:
"The State has also offered proof of another aggravating circumstance which they have to prove beyond a reasonable doubt and to a moral certainty an that is provided for in  13A-5-49(2) and that aggravating circumstance would be the defendant was previously convicted of another capital offense or felony and involving the use or threat of violence to the person. Now, ordinarily, the State would have to prove this beyond a reasonable doubt and to a moral certainty and that term has been described to you, but as I understand the situation in this case, it was stipulated between the State and the defendant that the defendant has been convicted of this offense as described in  13A-5-49(2)."
(R. 638-39).
Finally, at the close of the charge to the jury, the following occurred:
"THE COURT: Is the State satisfied?
"MR. RUMSEY: Yes, sir. There is still oneÔÇöwith the exception of one part, I am satisfied, but there is something that concerns me on it.
"(Whereupon the following was held in open Court outside the hearing and presence of the jury.)
"The charge is this Judge, we have offered a criminal mischief in the first degree. So we are showing him being convicted of a felony other than this conviction of the violence and so therefore I think you have to give that. Now, there has been testimony that the defendant or a witness, has previously been convicted of a felony, under the Davis Rule, it's not crime of violence anymore, and the purpose of that is to be used in assessing the credibility of that witness. I don't remember the exact wording, but it's the one where they can only use that prior felony in determining whether or not he is telling the truth on the current occasion, but it can't be used to show that he is a bad person. I mean that is the rationale of the charge. It deals with the impeachment of a witness showing a conviction of a felony. Now, it would not be on the second trial, it would have been in the first trial.
"THE COURT: Looks like it would be in his favor instead of pointing it out. That the defendant has been convicted of a felony prior to this trial. This may be considered by you andÔÇölet me ask you about this conflict in this thing, Mr. Rumsey. That testimony was allowed to go to you for one purpose only and that was for your consideration in determining what credibility you would give his testimony from the stand. Now, that felony about the flogging while masked went to them as an aggravating circumstance. Now, how are you going to delineate that?
"MR. RUMSEY: Well, I don't know unless you are going to say there was proof that that defendant has been convicted of a crime of criminal mischief in the first degree which is a felony under Alabama law and that testimony is allowed to go to you for one purpose only. I think the question I asked himÔÇö
"THE COURT: I'll give it the way the defendant wants it. You want this like this or the other? That won't be bringing up the flogging while masked.
"MR. GIDDENS: Well, I think you cover that. That was offered as an aggravating circumstance. And I think you said that was proved by stipulation. That it was crime of violence or threat to the person or something like that. Just like that.

*1229 "THE COURT: Just like this? Let the record show that they want a prior transcript, The State of Alabama, Plaintiff, versus Charles Randall Stewart, Defendant, filed May 9th, 1991 in case number CC-90630. The defendant's attorney consents to the charge being given on page R-801 through the first paragraph of R-802. Is that correct?
"MR. MATSON: I think they actually requested it.
"MR. GIDDENS: Yes, I requested it.
"THE COURT: State understand his agreement?
"MR. RUMSEY: Yes, sir, that's fine.
"THE COURT: All right. Bring the jury back.
"(Whereupon the following was held in open Court before the jury.)
"THE COURT: Let the record show that the jury was returned to the courtroom and by agreement of the State and the Defendant the following charge which the Court failed to give in its previous charge is now given, and it is by agreement.
"Now, there has been some testimony offered in this case to the effect that the defendant prior to taking the witness stand during the trial of this hearing or this case, had been convicted of a felony. That testimony was allowed to go to you for one purpose only and that was for your consideration in determining what credibility you will give his testimony from the stand here in this case. That is for you consideration along with all the other lawful factors in determining whether he is worthy of belief in what he says from the witness stand. The fact that he had been previously convicted of such a crime is no evidence whatsoever or no evidence whatever that he committed a later crime for which he is charged. And it would be wrong for a jury to consider it as such evidence.
"Satisfied for the State?
"MR. RUMSEY: Satisfied, Your Honor.
"THE COURT: Satisfied for the Defendant?
"MR. GIDDENS: Yes, sir."
(R. 655-660).
Although it is not clear from the record whether the defense stipulated that the State had proved the particular aggravating circumstance beyond a reasonable doubt, it appears from the discussion regarding the stipulation that the defense did so stipulate. It is clear from the record that the trial court understood the stipulation to mean that the State would not be required to prove that the appellant had previously been convicted of the offense of flogging while masked. When the trial court stated its understanding of the stipulation and when it gave the challenged instruction to the jury, the appellant did not attempt to correct the trial court's understanding of the stipulation. Even after the State asked for additional instructions about another prior felony conviction and mentioned the conviction for flogging while masked, the appellant did not raise this issue. Rather, defense counsel indicated that he was satisfied with the instructions. The appellant had ample opportunity to present this issue to the trial court, but he apparently chose not to do so. Therefore, we find that there was no plain error in the trial court's jury instruction concerning aggravating circumstances.

B
The appellant asserts that the trial court erred when it failed to instruct jurors that they must vote for life imprisonment without parole if the aggravating circumstances and the mitigating circumstances are equally balanced. When this case was before this court following the second sentencing hearing, the appellant challenged the trial court's instructions regarding the process of weighing aggravating and mitigating circumstances. In addressing that issue, we stated as follows:
"In Alabama, in order to recommend that a defendant be sentenced to death, the jury must be instructed that the aggravating circumstances must `outweigh' the mitigating circumstances. `If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return *1230 an advisory verdict recommending to the trial court that the penalty be death.'  13A-5-46(e)(3), Code of Alabama 1975. The aggravating circumstances do not have to outweigh the mitigating ones to any certain degree. Williams v. State, 601 So.2d 1062 (Ala.Cr.App.1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). The aggravating circumstances must simply outweigh the mitigating ones. See also Morrison v. State, 500 So.2d 36 (Ala.Cr. App.1985), aff'd, 500 So.2d 57 (Ala.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).
"The trial court in this case did not instruct the jury concerning the process of weighing the aggravating and the mitigating circumstances against each other. The court did instruct the jury concerning how it was to determine the existence of any aggravating and mitigating circumstances. However, the court gave the jury no direction as to how to apply these circumstances once they were proven. The court failed to instruct the jury that in order to vote for the death sentence the aggravating circumstances must be shown to outweigh the mitigating ones. We note that the judgment in this case was previously reversed by the Alabama Supreme Court because of the trial court's jury instructions in the penalty phase. Ex parte Stewart, 659 So.2d 122 (Ala.1993).
"It is the preferred practice to use the pattern jury instruction contained in the Alabama Pattern Jury Instructions: Criminal, `Pattern Jury Instruction for Use in the Penalty Phase of a Capital Case.' This instruction reads in part:
"`The law of this state provides that the punishment for the capital offense for which you have convicted this defendant is either death by electrocution or life imprisonment without eligibility for parole. The law also provides that which of those two punishments should be imposed upon the defendant depends on whether any aggravating circumstances exist and, if so, whether the aggravating circumstances outweigh the mitigating circumstances. ...
"`. . . .
"`However, if after a full and fair consideration of all the evidence in this case, you determine that the mitigating circumstances outweigh any aggravating circumstance(s) that exist ... your verdict would be to recommend punishment of life imprisonment without parole."
730 So.2d at 1211 (emphasis original). The instructions given in this case were almost identical to those stated by this court to be the preferred instruction.
As the appellant correctly points out in his brief, three results are possible when the aggravating circumstances and mitigating circumstances are weighed: 1) the aggravating circumstances could outweigh the mitigating circumstances, 2) the aggravating and mitigating circumstances could be equally balanced, or 3) the mitigating circumstances could outweigh the aggravating circumstances. Throughout the sentencing hearing, the trial court repeatedly instructed the jurors that they could vote for the death penalty only if the aggravating circumstances outweighed the mitigating circumstances. Thus, it was clear that if the aggravating and mitigating circumstances were equally balanced or if the mitigating circumstances outweighed the aggravating circumstances, then the jury was required to vote for life imprisonment without parole. Accordingly, we find no error in the trial court's instruction regarding the process of weighing aggravating and mitigating circumstances.

C
The appellant asserts that the trial court's reasonable doubt instruction was unconstitutional. The trial court gave the following reasonable doubt instruction:
"So the first thing I need to do is to explain to you what beyond a reasonable doubt and to a moral certainty is. Now, you will want to know what a reasonable doubt is. Sometimes it is a little difficult to define, but when I say the State is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must *1231 prove an alleged crime beyond every imaginable or speculative doubt or beyond all possibility of mistake, because that would be impossible.
"A reasonable doubt is an actual substantial doubt arising out of the testimony in the case or it could arise from the lack of testimony in the case. It is a doubt for which a reason can be assigned and the expression `to a moral certainty' means almost exactly the same thing as beyond a reasonable doubt, because if you are convinced to a point where you no longer have a reasonable doubt then you are convinced to a moral certainty."
(R. 635-36).
The Alabama Supreme Court addressed a similar instruction and that was being challenged on the same grounds in Ex parte McWilliams, 640 So.2d 1015, 1023-24 (Ala. 1993):
"McWilliams asserts that the guilt-phase and penalty-phase jury instruction on reasonable doubt violated his right to due process. In his introductory remarks to the guilt-phase jury, the trial court said:
"`The burden of proof in a criminal case is beyond a reasonable doubt and to a moral certainty. Now, don't get confused by those things. Those are synonymous: whatever is beyond a reasonable doubt is also to a moral certainty. Jurists and courts have had trouble for years in defining reasonable doubt. And the easiest definitions I have been able to find are very similar, but they say this: a reasonable doubt is a doubt for which a reason can be given. A reasonable doubt is a doubt for which there is a reason. The doubt which would justify an acquittal must be an actual substantial doubt, not just a possible doubt. It can't be a doubt based on guesswork or speculation or a capricious doubt. A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. A reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence. The burden is on the prosecution to prove the Defendant guilty beyond a reasonable doubt of every essential element of the crime charged here.'
"Similarly, in its guilt-phase jury instruction, the trial court charged the jury as follows:
"`The state must prove by the evidence the Defendant's guilt beyond a reasonable doubt. The doubt which would justify an acquittal must be an actual substantial doubt, not just a possible doubt. A reasonable doubt is not a guess or a surmise, and it is not a capricious doubt. Before a conviction can be had in this case, the State must convince each of you beyond a reasonable doubt and to a moral certainty [of] the Defendant's guilt.'
"The penalty-phase jury was instructed to apply the same definition of reasonable doubt in determining whether the State had proven the existence of aggravating factors.
"We first note that `beyond a reasonable doubt' and `to a moral certainty' are not exactly synonymous. In Ex parte Beavers, 598 So.2d 1320, 1321 (Ala.1992), this Court approved a jury instruction that included the following:
"`"And the expression `to a moral certainty' means practically the same thing as beyond a reasonable doubt. Because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."'
"(Emphasis added.) In other words, `moral certainty' is the state a jury reaches when it is convinced of the defendant's guilt beyond a reasonable doubt. We further note, however, that the trial court equated the two phrases only once, at the beginning of his introductory charge to the jury. Moreover, as set out below, the trial court's instruction, taken as a whole, does not suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Accordingly, we hold that this error in the trial court's instruction is harmless. Rule 45, A.R.App.P.
"In Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the United States Supreme Court reversed a *1232 criminal conviction, holding that the trial court's instruction on reasonable doubt violated the defendant's due process rights. The trial court in that case had equated reasonable doubt with `actual substantial doubt' and had instructed the jury that a reasonable doubt `must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof.' Cage v. Louisiana, 498 U.S. at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342 (quoting State v. Cage, 554 So.2d 39, 41 (La.1989)). The trial court in Cage further instructed the jury that `What is required is not an absolute or mathematical certainty, but a moral certainty.' Id. The United States Supreme Court concluded that `the words "substantial" and "grave"... suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.' Cage v. Louisiana, 498 U.S. at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342. It then held that, considering the use of those words in conjunction with `moral certainty,' a reasonable juror could have understood the instruction as allowing `a finding of guilt based on a degree of proof below that required by the Due Process Clause.' Id. (footnote omitted).
"`In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole.' Id. (citing Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985)). Having compared the instructions at question in Cage and those in the present case, we find that the instruction given here does not contain the same infirmity as that in Cage. Specifically, the instruction in the present case does not require `a grave uncertainty' for acquittal. Accordingly we reject this claim."
McWilliams, 640 So.2d at 1023-24 (footnote omitted).
Furthermore, we stated the following when this case was before us previously:
"The use of some of the terminology the Court found offensive in Cage does not automatically constitute reversible error. Jenkins v. State, 627 So.2d 1034 (Ala.Cr. App.1992); Herbert Williams v. State, 627 So.2d 985 (Ala.Cr.App.1991); McMillian v. State, 594 So.2d 1253 (Ala.Cr.App.1991); Earhart v. State, 593 So.2d 119 (Ala.Cr. App.1991); Luther Williams v. State, 601 So.2d 1062 (Ala.Cr.App.1991); Adams v. State, 587 So.2d 1265 (Ala.Cr.App.1991)."
Stewart v. State, 601 So.2d 491, 505 (Ala.Cr. App.1992).
We must construe the trial court's instruction in the context of the charges as a whole. Slaton, supra. Although the words "actual substantial doubt" and "moral certainty" were used in the instruction, the charge is clearly distinguishable from the charge condemned in Cage. The instruction did not suggest a finding of guilt based on a burden of proof lower than that required by constitutional due process protections, and it did not mislead or confuse the jury. Therefore, we find that there was not plain error in the trial court's reasonable doubt instruction. See Slaton, supra; Ex parte Taylor, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Coral v. State, 628 So.2d 954 (Ala.Cr.App.1992), on return to remand, 628 So.2d 988, aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); McMillian v. State, 594 So.2d 1253, 1283 (Ala.Cr.App. 1991); Parker v. State, 587 So.2d 1072 (Ala. Cr.App.1991), on return to remand, 610 So.2d 1171, aff'd, 610 So.2d 1181 (Ala.1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993).
The appellant also contends that the trial court erred in stating that a reasonable doubt is a doubt for which a reason can be assigned. Considered in the context of the entire charge, we find that the trial court did not err in making that statement. See McMillian, 594 So.2d at 1283.

D
The appellant asserts that the trial court diminished the jury's sense of responsibility by repeatedly telling the jury that its sentence would merely be a "recommendation." Specifically, he maintains that the court erred in telling the jury that the sentence imposed would be "merely a recommendation." This is not error. However, as *1233 the State points out, we can find no place in the record where the court referred to the jury's sentence as "merely a recommendation." There were some remarks that the verdict was a "recommendation." However, this is a correct statement of Alabama law.  13A-5-47, Ala.Code 1975. Furthermore, the trial court did not attempt in any way to minimize the jury's role and responsibility in sentencing. Therefore, the trial court's use of the word "recommendation" did not violate the principles of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). See also Stewart v. State, 601 So.2d 491 (Ala.Cr.App.1992); Parker, supra.

E
The appellant asserts that the trial court failed to question potential jurors about any bias they might have in favor of the death penalty. However, the appellant did not specifically ask the court to do so at the sentencing hearing, and he did not object to the trial court's failure to do so. Therefore, we will review this issue under the plain error standard.
Our review of the record indicates that the State and defense counsel both extensively questioned the members of each panel of the venire about any fixed opinion they might have against imposing the death penalty or against imposing a sentence of life imprisonment. Both also extensively questioned the members of each panel of the venire about whether they would automatically vote to impose the death penalty no matter what the facts were and whether they thought some cases deserve the death penalty more than others. We find that the voir dire examination concerning this issue was sufficient to determine whether any of the prospective jurors were biased in favor of the death penalty. Finally, "in the absence of a specific request that the jury venire by examined to determine whether any member of the panel has a fixed opinion in favor of capital punishment, the failure of the trial court to conduct such examination does not constitute plain error." Haney v. State, 603 So.2d 368, 392 (Ala.Cr.App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993), citing Kuenzel v. State; 577 So.2d 474 (Ala. Cr.App.1990), aff'd, 577 So.2d 531 (Ala.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); Lawhorn v. State, 581 So.2d 1159 (Ala.Cr.App.1990), aff'd, 581 So.2d 1179 (Ala.1991), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991); Henderson v. State, 583 So.2d 276 (Ala.Cr. App.1990), aff'd, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).

F
The appellant asserts that the trial court failed to give an instruction on the credibility of a child's testimony in a criminal case.[3] He also contends that the child was not competent to testify at the first trial because of his age and that the State should not have been allowed to read the child's prior testimony into evidence at the sentencing hearing because it did not sufficiently show that the child was unavailable at this hearing.
This court addressed similar claims in Stewart v. State, 601 So.2d at 503, stating as follows:
"The appellant next contends that the trial court erred in allowing the appellant's seven-year-old son to testify at trial. The appellant contends that he was not competent to take the witness stand because of his age. `There is no age at which competency is presumed. A four-year old can testify in cases other than sexual abuse or sexual exploitation if he or she has first been determined to be competent.' Price v. State, 590 So.2d 381, 382 (Ala.Cr.App.), aff'd, 590 So.2d 383 (Ala.1991).
"In the present case the trial court questioned the child before he was allowed to testify. It appears from the record that the child was very articulate for a seven-year-old. In fact there was no objection to his testimony during the trial. We find no error in the trial court's acceptance of the child as a competent witness. Cole v. State, 443 So.2d 1386 (Ala.Cr.App.1983); *1234 Miller v. State, 391 So.2d 1102 (Ala.Cr. App.1980)."
Thus, we find the appellant's claim concerning the child's competence to be without merit.
With regard to the child's unavailability to testify at the hearing, the record indicates that the State provided the trial court with a signed order from a Texas court denying the State's application to compel the child to come to court and testify. This matter was mentioned at least two times at the hearing, and the appellant did not object at either time. Rather, the appellant consented to allowing the State to use the child's prior testimony. Furthermore, it does not appear that the appellant ever requested an instruction on the credibility of a child's testimony. In fact, defense counsel stated that he was satisfied with the trial court's instructions. Therefore, we find no merit to the appellant's arguments.

VIII
The appellant's eighth argument is that the prosecutors engaged in misconduct at his sentencing hearing. He cites three specific instances of alleged misconduct and asserts that the cumulative effect of the alleged misconduct prejudiced him.

A
The appellant asserts that the prosecutor placed highly prejudicial evidence of unadjudicated crimes before the jury. Specifically, he argues that the State improperly presented evidence that he rammed the victim's vehicle approximately ten days before she was killed. The appellant did not object at the sentencing hearing to the presentation of this evidence. Therefore, we will review it under the plain error rule.
This court previously addressed the admission of this testimony, stating as follows:
"The appellant next contends that the trial court erred in allowing evidence of prior misconduct, not the subject of the indictment, to be received into evidence at trial. Specifically, the appellant maintains that evidence that he rammed into the car of the victim's husband was received into evidence for the sole purpose of prejudicing him. Generally, evidence of prior bad acts not charged in the indictment is not admissible at trial. C. Gamble, McElroy's Alabama Evidence  69.01(1) (4th ed.1991). However, there are exceptions to this general exclusionary rule where evidence of prior offenses may be used as substantive evidence of the appellant's guilt. These instances include, but are not limited to: physical capacity, res gestae, knowledge, intent, plan or scheme, and motive and identity. McElroy's  69.01 et seq.
"In the present case, the state argues that the prior misconduct was admissible for the purposes of establishing the appellant's intent at the time he killed his ex-wife. `If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime.' McElroy's  69.01(5). `"[E]vidence of other crimes may be admitted in the trial of the now-charged crime when it is relevant to the now-charged crime and tends to prove an element of the now-charged crime which is at issue."' White v. State, 527 So.2d 1349, 1350 (Ala.Cr.App. 1988) (emphasis added). The appellant, by contending that he accidentally shot the victim, placed his intent at the time of the murder at issue.
"In State v. Featherman, 133 Ariz. 340, 651 P.2d 868 (Ariz.App.1982), the defendant was charged with murder, and evidence that the defendant had hit the victim in the head with a baseball bat two months prior to the murder was received into evidence at trial. The appellate court, in upholding the decision of the trial court, stated:
"`In the present case the evidence of the defendant's hostility to his victim demonstrated by the baseball bat incident.. is directly relevant to his intent the night she was killed. Intent is frequently shown by evidence of other criminal acts of the same character.'
"Featherman, 651 P.2d at 873.

*1235 "Evidence that the appellant hit the victim's husband's automobile 10 days before the murder was correctly received into evidence and was relevant to show the appellant's intent on the day of the murder. See White, supra; Willis v. State, 449 So.2d 1258 (Ala.Cr.App.1984). See also McCormick on Evidence  190 (4th ed.1992)."
Stewart v. State, 601 So.2d at 502.
Accordingly, the appellant's argument that the prosecutor engaged in misconduct by introducing testimony that he rammed the victim's vehicle ten days before the murder is without merit.
The appellant also argues that the prosecutor improperly introduced evidence that he had previously been convicted of burglary. In that regard, the record shows that the following occurred during the State's direct examination of Circuit Clerk Clarence Haynes:
"Q (Mr. Matson): Would that beÔÇöif you would just tell the ladies and gentlemen of the jury what that is?
"A (Mr. Haynes): This is a case action summary which details all the action during the course of this case and it charges burglaryÔÇö
"MR. GIDDENS: Judge, can I take up something outside the presence of the jury at this time?
"THE COURT: All right.
"(Whereupon the following was held in open Court outside the hearing and presence of the jury.)
"MR. GIDDENS: Judge, at this time I would move for a mistrial in that he has stated, I believe in an attempt to prove his conviction of flogging while masked, I think this is where this is going. It stated that he wasÔÇöactually the original charge was burglary and reduced or something to that effect. The jury has heard burglary first or burglar, I know. And that is not what this had been proved for. This is an attempt to prove an aggravating circumstance of a conviction involving violence or threat to a person or flogging while masked. But again, I move for a mistrial because he stated `burglary.'
"MR. RUMSEY: Judge, I don't know what the jury heard. I know that I tried to interrupt the witness. The certified copy of the case action summary is the way to prove it. He has had a copy of it for a long time. That is the way we proved it in the other two trials, is by certified copy admitted. I didn't realize that the entry shows the burglary and the pleas to flogging while masked, but if that is the only way to prove it, then that is what is going to be on it, I guess. I don't know, but we certainly were not attempting toÔÇöit shows it on the certified copy, burglary first and flogging while masked. So, Steve has had a copy of it. There has been no motion to eradicate a portion of it. The Clerk was just reading what was on the certified copy of the minute entry which has been introduced two different times, with no objection. Now, the only thing I can suggest is that you can direct the jury, if he wants them to disregard any statements made by the Clerk up to this point, and we can eradicate if they so desire, the burglary first that is on the case action summary. But it's notÔÇönumber one, I'm not sure that it doesn't have to come in under the certified copy of the minute entry. I have no objection to eradicate it, but I don't think it's something that a mistrial is due to be granted, particularly from the answers at that point and in really not being responsive to a question.
"THE COURT: Well, what did he say?
"MR. RUMSEY: Well, I'm not sure what they heard. I thought he was fixing to try to say burglary and when I heard that coming out, I came up here and said, `Excuse me,' but I don't know what he said after that, but I didÔÇöhe may have startedÔÇöhe started talking again and I said, `Excuse me,' again and pulled Barry over to the side. I don't know. I meanÔÇöbut I thought was fixing to come when he startedÔÇöwhen he said the original charge and I heard the `b' coming and I started hollering excuse me. I don't know what the jury heard him, heard me, or what. I don't know what they heard.
"THE COURT: Well, I will instruct them about that and overrule the motion *1236 for a mistrial, but how do you plan to proceed without that being involved there?
"MR. RUMSEY: I'd be glad to make a copy of that and we can white out on the copy or make two copies, I guess and white out `burglary first' and make another copy of it and it won't be in there.
"THE COURT: All right. Bring the jury back in and I'll wait until we come back from lunch. I'm going to send them on to lunch. We have made arrangements for them to go at a quarter to twelve.
"(Whereupon the following was held in open Court before the jury.)
"THE COURT: Members of the jury, I instruct you at this time to disregard any portion of this witness' testimony other than who he is and what his job is. There was something that shouldn't come out might have come out, you might have heard it and you might not have. However, we are going to get that worked out.
"We have made the same arrangements as we did yesterday and it's just about a quarter to twelve and we are going to let you go to lunch at this time. The same instructions still apply while you are at lunch. Do not discuss the case among yourselves, do not allow anyone to discuss it with you or in your presence and don't try to decide the case until you have heard all the evidence and the charge as to the law.
"MR. RUMSEY: Would you poll each one of them and ask them if they can disregard what they heard from this witness?
"THE COURT: Can you follow this instruction to disregard anything that he said other than his qualifications? You might not have heard anything.
"(Jury polled.)
"THE COURT: Let the record show I received 14 affirmatives."
(R. 427-33).
The record reflects that the prosecutor did not intentionally attempt to introduce evidence that the appellant had previously been charged with burglary. Rather, it shows that any testimony about that charge was inadvertently and unintentionally given as the circuit clerk was reading the case action summary sheet to prove the appellant's prior conviction for flogging while masked. Also, from the record, it is not clear how much, if any, of the clerk's testimony about the charge the jury heard. Clearly, the prosecutor made every effort to avoid allowing the clerk to utter the word "burglary." Furthermore, the trial court acted promptly to instruct the jury to disregard the clerk's testimony and polled the jurors to determine whether or not they could do that. All of the jurors indicated that they could disregard the testimony.
"A high degree of necessity for the granting of a mistrial must be demonstrated before one should be granted. Woods v. State, 367 So.2d 982 (Ala.1978). A trial judge is allowed the exercise of broad discretion in deciding whether that high degree of necessity is present. Id. The entry of a mistrial should be a last resort as in cases of otherwise ineradicable prejudice. Leverett v. State, 462 So.2d 972 (Ala.Cr. App.1984), cert. denied, 462 So.2d 972 (Ala. 1985). When improper statements are made which are eradicable, prompt action by the trial court, impressing upon the jury the importance of not considering the improper matters, removes any prejudicial effect. Id."
McMillian, 594 So.2d at 1267-68.
In the appellant's case, not only was any prejudice eradicable, but also it was eradicated by the trial court's curative instructions. Accordingly, the trial court did not err in denying the appellant's motion for a mistrial.

B
The appellant asserts that the prosecutors improperly asked questions about absent witnesses. During the State's cross-examination of the appellant, the following occurred:
"Q (Mr. Rumsey): And then when you get up there, tell the ladies and gentlemen who Little Mack talks to. I believe you referred to him as George a little while ago.
"A (Defendant): Judge.
"Q: But you called him George a little while ago didn't you?

*1237 "A: Judge Simms. I didn't mean no disrespect.
"Q: No, I know you didn't but you know him well. Now, who did little Mack go talk to?
"A: Judge Simms.
"Q: Back in chambers, didn't he?
"A: Yes, sir.
"Q: And when you came out, did Judge Simms give that child back to his Mamma?
"A: Yes, he did. But are we going to tell why?
"Q: I know what you keep spouting about stipulations.
"A: Well let's get Judge Simms down here and let him say, Mr. Rumsey.
"Q: Why don't you subpoena him?
"THE WITNESS: You want to?
"MR. GIDDENS: Just answer his questions."
(R. 517-18).
Initially, we note that the appellant did not object to this exchange at trial. Therefore, we will review it for plain error. Read in context, the prosecutor's remark was a response to the appellant's statement about getting Judge Simms to testify in the case. It clearly was not an unfavorable comment on the appellant's failure to call a witness who was equally available to both parties. Therefore, it did not rise to the level of prosecutorial misconduct and did not prejudice the appellant.

C
The appellant asserts that the district attorney improperly read the indictment to the jury and improperly told the jury that he signed the indictment. In support of his argument, the appellant asserts that the prosecutor's conduct was an improper expression of the prosecutor's personal opinion about the appellant's guilt. Because the appellant did not object to the comment at trial, we will review it only for plain error.
During his opening statement, the prosecutor stated:
"Now this case comes to you by way of a grand jury indictment. And I am going to take just a moment to read this. It is a two-count indictment where the defendant has previously been found guilty of both of these counts. It reads as follows: ..."
(R. 140-41). As the prosecutor correctly stated, the appellant had already been found guilty of both counts of the indictment. Therefore, his reading the indictment was not an improper expression of his personal opinion about the appellant's guilt. Rather, he simply read the indictment to inform the jury of the precise charges on which the appellant had already been found guilty. Thus, the appellant's argument is without merit.

D
Finally, the appellant asserts that the prosecutors' improprieties had a cumulative prejudicial effect on his trial. Because we find that the prosecutor did not engage in misconduct as alleged by the appellant, his claim that the alleged improprieties had a cumulative prejudicial effect on his trial is without merit.

IX
The appellant's ninth argument is that blacks were systematically underrepresented on his jury venire. He asserts that, although the population in Talladega County is 31 percent black, only 20 percent of the venire was black. The appellant's only challenge to the composition of the jury at trial was based upon the fact that 27 of 84 veniremembers were randomly selected to go to another courtroom. While the appellant's attorney noted that the majority of the blacks on the venire were excused to go to the other courtroom, he admitted that the selection was made randomly. Moreover, the circuit clerk testified that the veniremembers who were excused to go to the other courtroom were randomly selected.
The test to determine whether the fair cross-section requirement of the Sixth Amendment to the United States Constitution has been violated is as follows:
"`In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is *1238 a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.'

"Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)."
Pierce v. State, 576 So.2d 236, 241 (Ala.Cr. App.1990), cert. denied, 576 So.2d 258 (Ala. 1991).
The appellant has the burden of establishing a prima facie case of a "fair cross section" violation. Rayburn v. State, 495 So.2d 733 (Ala.Crim.App.1986). The appellant has failed to meet this burden. The mere recitation of the percentage disparity between the population of blacks in Talladega County and the number of blacks on the jury venire is not sufficient to allow us to conclude that blacks were not fairly represented on this jury venire. See also Pierce, supra.
Finally, even if the appellant had demonstrated that blacks were underrepresented on the jury venire, he failed to show that this was due to the systematic exclusion of blacks in the selection process of the jury venire list. The appellant presented no evidence that blacks were systematically excluded from the jury venire list in Talladega County. "The United States Constitution `does not require an exact proportion between the percentage of blacks in the population and those on the jury list. What is required is that no qualified person can be excluded from jury service.'" Pierce, supra at 241-42 (quoting Jackson v. State, 549 So.2d 616, 619 (Ala.Crim.App.1989)). Because the appellant has failed to prove that blacks were underrepresented on his jury venire due to systematic exclusion of blacks in the jury selection process, we find his claim to be without merit. Ex parte Land, 678 So.2d 224, 244 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996). Burleson v. City of Daphne, 599 So.2d 1251 (Ala.Cr.App.1992).

X
The appellant's tenth argument is that the trial court improperly admitted his statement about the crime. He cites three reasons in support of his argument. Although he does not specify which statement provides the basis for his objection, we believe it to be the statement he made to Deputy Dallas Davenport as he was being transported to the sheriff's office immediately following the murder. Because the appellant did not object to the admission of the statement at trial, we must examine this issue under the plain error doctrine.

A
First, the appellant asserts that the statement was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Deputy Davenport testified as follows:
"Q: (Mr. Rumsey): And when you were going back down to the County Building, was he saying anything?
"A: (Dallas Davenport): Yes, sir. He was trying to tell me what was happening, what took place, telling me a man's got to do what a man's got to do. And I kept telling him to hush.
"Q: You kept telling him to be quiet? "A: Right.
"Q: And then did he tell you a man's got to do what a man's got to do?
"A: Correct. More than one time.
"Q: And you kept telling him to be quiet?
"A: He had not been advised of his rights and I did not want to talk to him about it.
"Q: And you were a deputy at that time and not an investigator?
"A: Yes, sir, that's correct.
"Q: And you were not asking him any questions yourself?
"A: No, sir.
". . . .
"Q: (Mr. Giddens): Now, about that statement you made. He was actually trying also to talk to you about his son, wasn't he?

*1239 "A: Right.
"Q: Started talking about Little Mack?
"A: Right.
"Q: Tried to tell you what happened?
"A: Right.
"Q: And as far as you know, nobody had advised him of his rights that he could remain silent?
"A: I was telling him, I said, `Randy, I don't want to hear it.' I told him that he had not been advised on his rights and I did not want to hear it. I did not want to question him because I wasn't no investigator.
"Q: But he was trying to talk to you about his son?
"A: And why a man's got to do what a man's got to do.
"Q: Did he say anything about loving his son or loving Betty or anything like that, if you recall?
"A: I don't remember him saying anything about loving Betty, no, sir. Because I was trying to get him to be quiet. And in the office he told me the same thing and I had to tell him at least on two different occasions at the office that I didn't want to hear it."
(R. 421-25).
"Custody and interrogation are the two prerequisites that trigger the need for Miranda warnings. Miranda, 384 U.S. at 477-78, 86 S.Ct. at 1629-30. Interrogation has been defined as express questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of interrogation is `words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.' Id. at 301, 100 S.Ct. at 1689-90. Here, the appellant was in custody, but was not being interrogated. His inquiries about the disposition of his vehicle were volunteered. Cowart's comment to the appellant was not in the form of a question directed at the appellant and clearly did not constitute interrogation. Thus, there was no need at that point for Miranda warnings. The trial court properly overruled the objection."
Britton v. State, 631 So.2d 1073, 1078-79 (Ala.Cr.App.1993).
The appellant was not being interrogated when he made the statements to Deputy Davenport. Therefore, there was no need at that point for Miranda warnings and there was no Miranda violation.

B
Second, the appellant asserts that the statement was made involuntarily. "Volunteered statements of any kind are not barred by the Fifth Amendment, and their admissibility is likewise not affected by Miranda." Britton v. State, 631 So.2d 1073, 1078 (Ala.Cr.App.1993) citing Williams v. State, 601 So.2d 1062 (Ala.Cr.App.1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). Based upon our determination that there was no Miranda violation and based upon Deputy Davenport's testimony, it is clear that the appellant volunteered the challenged statements despite Deputy Davenport's repeated warnings to remain silent. Thus, the appellant's argument that the statement was involuntary is refuted by the record and is without merit.

C
Third, the appellant asserts that the trial court erred because it failed to instruct the jury that it must make the ultimate decision regarding the voluntariness of the confession. As stated above, the record reflects that the appellant made the statement voluntarily despite warnings to the contrary. Therefore, the voluntariness of the statement was not in issue and it was not necessary for the trial court to so instruct the jury.

XI
The appellant's eleventh argument is that the trial court improperly admitted photographs that served only to inflame the jury. Because the appellant did not object to the admission of the photographs, we must determine whether the admission of the photographs constituted plain error.
*1240 The appellant asserts that the court erred in allowing photographs of the victim's body to be received into evidence at the penalty phase of the proceedings because these photographs were highly inflammatory and irrelevant.
"`"[P]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors." Ex parte Siebert, 555 So.2d 780, 784 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See generally C. Gamble, McElroy's Alabama Evidence,  207.01(2) (4th ed.1991). "The photographs of the victim were properly admitted into evidence. Photographic exhibits are admissible even though they may be cumulative, ... demonstrative of undisputed facts, ... or gruesome...." Williams v. State, 506 So.2d 368, 371 (Ala.Cr.App.1986), cert. denied, 506 So.2d 372 (Ala.1987).'
"DeBruce v. State, 651 So.2d 599, 607 (Ala. Cr.App.1993). See also Ex parte Bankhead, 585 So.2d 112 (Ala.1991). The court did not err in allowing photographs of the victim's body to be received into evidence."
Hutcherson, 677 So.2d at 1200.
"`[P]hotographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and are based on undisputed matters. Magwood [v. State], 494 So.2d [124, 141 (Ala.Cr.App.1985), affirmed, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986)]. The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried. Id. Also, a photograph may be gruesome and ghastly, but this is not a reason to exclude it as long as the photograph is relevant to the proceedings, even if it tends to inflame the jury. Id.'

"Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). Accord, Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); McElroy's at  207.01(2)."
Parker, 587 So.2d at 1092-93.
Here, the photographs were relevant to the appellant's testimony that he and the victim struggled and that he accidentally shot her. They provide relevant information, based upon scientific testimony, about the location of the gun when the victim was shot. Accordingly, there was no plain error in admitting the photographs of the victim into evidence.

XII
The appellant's twelfth argument is that the trial judge should have recused himself from the appellant's sentencing hearing because he presided over the appellant's first full trial and second sentencing hearing. The appellant failed to object on this ground at the sentencing hearing. Therefore, we must review the trial court's actions in this regard for plain error. We hold that the trial judge who presided over the appellant's third sentencing trial was not disqualified because he had presided over the appellant's first full trial and second sentencing hearing.
"`To disqualify a judge for bias, the bias must be shown to be personal.' Ex parte Whisenhant, 555 So.2d 235, 238 (Ala.1989), cert. denied, [496] U.S. [943], 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).
"`[T]he fact that the trial judge had presided over the defendant's previous two sentencing trials was not grounds for disqualification. A trial judge need not recuse himself solely on the ground that he was the "same trial judge who had heard the case and imposed the death penalty" in a defendant's prior trial. Ex parte Whisenhant, 482 So.2d 1241, 1245 (Ala.1983).'

"Whisenhant, 555 So.2d at 238.
"`Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion. Jaffe v. Grant, 793 F.2d 1182, 1189 (11th Cir. 1986), cert. denied, 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). The judge's bias must be personal and extrajudicial; it must derive from something *1241 other than that which the judge learned by participating in the case. Id. at 1188-1189. An exception to this general rule occurs when the movant demonstrates "pervasive bias and prejudice." Id. at 1189 (quoting United States v. Phillips, 664 F.2d 971, 1002-03 (5th Cir., Unit B (1981)), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)).
"McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir.1990)."
Parker, 587 So.2d at 1097. See also Bush v. State, 695 So.2d 70 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.1997).
In this case, the appellant has made no showing of pervasive bias and prejudice on the part of the trial judge. As discussed in Part III of this opinion, the trial court did not err in adopting its findings of fact from the guilt phase because the issue of guilt was not an issue in this sentencing hearing. Therefore, the appellant incorrectly asserts that the fact that the trial judge adopted his prior findings demonstrated his inability to judge the evidence fairly at the appellant's third sentencing hearing. Furthermore, this court can find no indication that the trial court was biased or prejudiced against the appellant. Our independent review of the record convinces us that the trial judge was fair and impartial and that the appellant's argument is without merit.

XIII
The appellant's thirteenth argument is that the trial court should have ordered a change of venue for his trial. Specifically, the appellant claims that the written and broadcast media extensively covered the murder, the investigation, and his two previous trials. He also claims that jurors in the jury pool had heard about the case. Because the appellant never requested a change of venue, we must review the trial court's actions for plain error. Rule 45A, Ala. R.App. P.
"`Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala. Crim.App.1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App.1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
"`"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court...."
"`The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, "[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978).'"
"Ex parte Grayson, 479 So.2d 76, 80 (Ala. 1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985)."
Williams v. State, 565 So.2d 1233, 1237-38 (Ala.Cr.App.1990).
The appellant has not shown the existence of any actual prejudice against him and has not shown that the community was so saturated with prejudicial publicity that he could not have gotten a fair hearing. He also has not shown that any adverse publicity biased any of the prospective jurors. Rather, *1242 he has made bare allegations of prejudicial publicity and bias. Applying the principles set forth above to the facts of this case, we find that no reversible error occurred in this regard.

XIV
The appellant's fourteenth argument is that his death sentence was sought and imposed as a result of a pattern of racial bias, but he presents no evidence to support it. We have previously stated that the judicial override provides the justice system with another opportunity to achieve rational results in capital cases. Ex parte Giles, 632 So.2d 577 (Ala.1993), cert. denied, 513 U.S. 1199, 115 S.Ct. 1271, 131 L.Ed.2d 149 (1995); Ex parte Hays, 518 So.2d 768 (Ala.1986). There is nothing in the record of this case to support or even to suggest in the slightest way that race influenced the "decisionmakers" or played any role in the appellant's conviction and sentence. The record discloses that every effort was made to ensure that the appellant received a fair trial, and we believe that he did. McMillian v. State, 594 So.2d 1253 (Ala.Cr.App.1991). Accordingly, we find the appellant's argument to be without merit.

XV
The appellant's fifteenth argument is that the Alabama statute limiting court appointed attorneys' fees to one thousand dollars for out-of-court work for each phase of a capital trial is deplorable and unconstitutional. Specifically, the appellant contends that the limitation violates the separation of powers doctrine, constitutes a taking without just compensation, deprives indigent capital defendants of effective assistance of counsel, and denies equal protection in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama state law. These claims have previously been addressed and decided adversely to the appellant. Ex parte Smith, 698 So.2d 219 (Ala.1997); Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997); Slaton v. State, 680 So.2d 879 (Ala.Cr.App.1995); May v. State, 672 So.2d 1310 (Ala.1995); Barbour v. State, 673 So.2d 461 (Ala.Cr.App.1994); Johnson v. State, 620 So.2d 679 (Ala.Cr.App.1992), rev'd on other grounds, 620 So.2d 709 (Ala.1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993); Smith v. State, 581 So.2d 497 (Ala.Cr.App.1990), rev'd on other grounds, 581 So.2d 531 (Ala.1991); Ex parte Grayson, 479 So.2d 76 (Ala.1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Sparks v. Parker, 368 So.2d 528 (Ala.1979), appeal dismissed, 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979).
Therefore, the appellant's contentions are without merit.

XVI
The appellant's sixteenth argument is that Alabama's use of the electric chair as the method of execution constitutes cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution. There is an abundance of caselaw, however, that holds that the death penalty is not per se cruel and unusual punishment. Further, electrocution as a means of capital punishment is not cruel and unusual punishment. Williams v. State, 627 So.2d 985 (Ala.Cr.App.1991); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); Boykin v. State, 281 Ala. 659, 207 So.2d 412 (1968), reversed on other grounds, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
Therefore, the appellant's argument is without merit.

XVII
The appellant's seventeenth argument is that the trial court should have conducted fully sequestered individual voir dire. Because the appellant never requested individual voir dire, we must review this issue under the plain error doctrine.
"A trial court is vested with great discretion in determining how voir dire examination will be conducted, and that court's decision on how extensive a voir dire examination is required will not be overturned *1243 except for an abuse of that discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Lane v. State, 644 So.2d 1318 (Ala. Cr.App.1994); Harris v. State, 632 So.2d 503 (Ala.Cr.App.1992), affirmed, 632 So.2d 543 (Ala.1993), affirmed, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). After reviewing the record, we conclude that the trial court did not abuse its discretion in this regard."
Ex parte Land, 678 So.2d at 242.
In Haney, supra, this court addressed a claim similar to the one raised by the appellant as follows:
"Appellant contends that the trial court erred in failing to grant individually sequestered voir dire of the jury venire. The trial court did permit individual voir dire in several instances but otherwise the jurors were questioned by panels. As a general rule, the decision whether to voir dire prospective jurors individually or collectively is within the sound discretion of the trial court. Waldrop v. State, 462 So.2d 1021 (Ala.Cr.App.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). This discretion is limited, however, by the requirements of due process. United States v. Hawkins, 658 F.2d 279 (5th Cir.1981); Waldrop v. State. Individual questioning may be necessary under some circumstances to ensure that all prejudice has been exposed. United States v. Hurley, 746 F.2d 725 (11th Cir.1984). We have reviewed the record of the voir dire examinations and the entire jury selection procedure in this case and find that the method of empaneling the jury provided reasonable assurance that prejudice would have been discovered if present. We find no abuse of discretion in the trial court's handling of the empaneling of this jury."
603 So.2d at 402.
"Even in capital cases, there is no requirement that a defendant be allowed to question each perspective juror individually during voir dire examination." Hallford v. State, 548 So.2d 526, 538 (Ala.Cr.App.), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). See also Taylor v. State, 666 So.2d 36 (Ala. Cr.App.1994), aff'd on remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala. 1995).
A complete review of the record concerning the voir dire questioning indicates that the method of the examination and the empaneling of the jury "provided reasonable assurance that prejudice would have been discovered if present." Haney, supra at 402. The record does not reflect any evidence of pretrial publicity before the hearing which would have been prejudicial to the appellant. One of the jurors indicated her opposition to the death penalty during voir dire in the presence of the members of one panel of prospective jurors. However, the record indicates that the trial court questioned her more extensively about her views and excused her only after dismissing the remaining members of the panel to another courtroom. Thus, it appears that she was not excused in front of other jurors as the appellant contends. Furthermore, even if she had been excused in front of other jurors, the record shows that prospective jurors on subsequent panels freely expressed their feelings about the death penalty. Thus, there is no indication that the trial court erred and that the appellant was prejudiced by the trial court conducting voir dire examination of prospective jurors in panels rather than individually.

XVIII
The appellant's eighteenth argument is that Alabama's death penalty statute is constitutionally defective because it fails to provide what weight the trial court must afford a jury recommendation. This claim was recently addressed and rejected by the United States Supreme Court in Harris v. Alabama, 513 U.S. 504, 511-15, 115 S.Ct. 1031, 1035-37, 130 L.Ed.2d 1004 (1995), in which that Court held as follows:
"Consistent with established constitutional law, Alabama has chosen to guide the sentencing decision by requiring the jury and judge to weigh aggravating and mitigating circumstances. Harris does not challenge this legislative choice. And she objects to neither the vesting of sentencing authority in the judge nor the requirement *1244 that the advisory verdict be considered in the process. What she seeks instead is a constitutional mandate as to how that verdict should be considered; relying on Florida's standard, she suggests that the judge must give `great weight' to the jury's advice.
"We have rejected the notion that `a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.' Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 2330, 101 L.Ed.2d 155 (1988). Equally settled is the corollary that the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer. See, e.g., Blystone v. Pennsylvania, 494 U.S. 299, 306-307, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990); Eddings v. Oklahoma, 455 U.S. 104, 113-115, 102 S.Ct. 869, 876-877, 71 L.Ed.2d 1 (1982); Proffitt [v. Florida], 428 U.S. [242], at 257-258, 96 S.Ct. [2960], at 2969 [49 L.Ed.2d 913 (1976)] (joint opinion of Stewart, Powell, and Stevens, JJ.). To require that `great weight' be given to the jury recommendation here, one of the criteria to be considered by the sentencer, would offend these established principles and place within constitutional ambit micromanagement tasks that properly rest within the State's discretion to administer its criminal justice system. We therefore hold that the Eighth Amendment does not require the State to define the weight the sentencing judge must accord to an advisory jury verdict.
". . . .
"Harris draws our attention to apparent disparities in the weight given to jury verdicts in different cases in Alabama. For example, the trial judge here did not specify his reason for rejecting the jury's advice but in another case wrote that he accorded `great weight' to the recommendation, State v. Coral, No. CC-88-741 (Montgomery Cty., June 26, 1992), Alabama Sentencing Orders, p. 72 (lodged with the Clerk of this Court). In rejecting the jury verdict, other judges have commented variously that there was a `reasonable basis' to do so, State v. Parker, No. CC-88-105 (Colbert Cty., Dec. 3, 1991) Alabama Sentencing Orders, p. 408, that the verdict was `unquestionably a bizarre result,' Ex parte Hays, 518 So.2d 768, 777 (Ala.1986), or that `if this were not a proper case for the death penalty to be imposed, a proper case could scarcely be imagined,' State v. Frazier, No. CC-85-3291 (Mobile Cty., July 31, 1990) Alabama Sentencing Orders, p. 139. Juxtaposing these statements, Harris argues that the Alabama statute permits judges to reject arbitrarily the advisory verdict, thereby abusing their sentencing discretion.
"But these statements do not indicate that the judges have divergent understandings of the statutory requirement that the jury verdicts be considered; they simply illustrate how different judges have `considered' the jury's advice. There is no reason to expect that the advisory verdicts will be treated uniformly in every case. The Alabama statute provides that the weighing process `shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison,' Ala.Code  13A-5-48 (1994), which is no less than what the Constitution requires, see Proffitt, 428 U.S., at 258, 96 S.Ct., at 2969 (joint opinion). The disparate treatment of jury verdicts simply reflects the fact that, in the subjective weighing process, the emphasis given to each decisional criterion must of necessity vary in order to account for the particular circumstances of each case. See Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982) (`[A] consistency produced by ignoring individual differences is a false consistency')."
The appellant also contends that "the jury's general verdict recommending the death penalty violated the Eighth Amendment prohibition against the arbitrary infliction of capital punishment because it failed to specify whether the jury found one or more of the statutory aggravating circumstances that were a prerequisite to the imposition of a death sentence." This court previously discussed this issue and decided it adversely *1245 to the appellant in Haney, 603 So.2d at 388, wherein we held:
"We have previously addressed this issue and concluded that there is no statutory or constitutional requirement that the jury make specific findings of aggravating or mitigating circumstances during the sentencing phase of a capital case under Alabama's capital offense statute.
"`This court in Bush v. State, 431 So.2d 555 (Ala.Cr.App.1982), aff'd, 431 So.2d 563 (Ala.1983), cert. denied, Bush v. Alabama, 464 U.S. 865 [104 S.Ct. 200, 78 L.Ed.2d 175] ... (1983), stated that "any such contention that the jury should make specific findings enumerating the aggravating circumstances it found to exist was foreclosed by Proffitt v. Florida, 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] ... (1976)." In Proffitt, the United States Supreme Court stated that "since ... the trial judge must justify the imposition of a death sentence with written findings, meaningful appellate review of each such sentence is made possible." 428 U.S. at 250 [96 S.Ct. at 2965].... Because the trial court was required to and did set forth in writing findings of fact as a basis for the sentence of death, as required by  13-11-4 [now  13A-5-47], we find that appellant can be afforded meaningful appellate review in accordance with the rule in Proffitt and Bush.'
"Morrison v. State, 500 So.2d 36, 42 (Ala. Cr.App.1985), aff'd, 500 So.2d 57 (Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987). See also Ex parte Clisby, 456 So.2d 105 (Ala.1984)."
(footnote omitted).
In this case, the trial court set forth written findings of fact as the basis for the sentence of death, as required by  13A-5-47. From this, the appellant can be afforded meaningful appellate review. See Proffitt v. Florida, supra; Bush v. State, supra. Accordingly, the appellant's contention is without merit.

XIX
The appellant's nineteenth argument is that the evidence was legally insufficient to support the aggravating circumstances of kidnapping-murder or burglary-murder. This argument is also without merit. This court and the Alabama Supreme Court have both affirmed the appellant's convictions for kidnapping-murder and burglary-murder. Stewart v. State, 659 So.2d 129 (Ala.Cr.App. 1994); Ex parte Stewart, 659 So.2d 122 (Ala. 1993); Stewart v. State, 659 So.2d 120 (Ala. 1992). Thus, both aggravating circumstances had already been proven as a matter of law, as the trial court instructed the jury, and the State did not have to prove them again for the jury and the trial court to determine that they were aggravating circumstances.

XX
The appellant's twentieth argument is that he is entitled to a new sentencing hearing based on the cumulative effect of all the above alleged errors. However, our review of the record does not reveal any errors which were prejudicial to the appellant. Accordingly, we find the appellant's argument to be without merit.

XXI
Pursuant to  13A-5-53, Ala.Code 1975, this court must address the propriety of the appellant's conviction and sentence of death. The appellant was indicted and convicted of capital murder because the murder was committed during the course of a kidnapping and during the course of a burglary.  13A-5-40(a)(1) and (4), Ala.Code 1975.
The record reflects that the sentence of death was not imposed as the result of the influence of passion, prejudice, or any other arbitrary factor.  13A-5-53(b)(1), Ala.Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found two aggravating factors: 1) the murder was committed while the appellant was engaged in a kidnapping,  13A-5-49(1), and 2) the murder was committed while the appellant was engaged in a burglary,  13A-5-49(4). The trial court found that there were no statutory and no nonstatutory mitigating circumstances. The trial court's findings show that *1246 it weighed the aggravating circumstances and the absence of mitigating circumstances and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and this court agrees with the trial court's findings.
Section 13A-5-53(b)(2) requires this court to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After independently weighing the aggravating circumstances against the lack of mitigating circumstances, we find that death is the appropriate sentence.
As required by  13A-5-53(b)(3), we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant murdered his ex-wife during the commission of a burglary and a kidnapping. Similar crimes are being punished by death throughout this state. See, e.g. Brooks v. State, 695 So.2d 176 (Ala.Cr. App.1996), aff'd, 695 So.2d 184 (Ala.1997); Payne v. State, 683 So.2d 440 (Ala.Cr.App. 1995), aff'd, 683 So.2d 458 (Ala.1996), cert. denied, Payne v. Alabama, 520 U.S. 1146, 117 S.Ct. 1319, 137 L.Ed.2d 481 (1997); Land v. State, 678 So.2d 201 (Ala.Cr.App.1995), aff'd, 678 So.2d 224 (Ala.1996), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Barbour v. State, 673 So.2d 461 (Ala. Cr.App.1994), aff'd, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); Jenkins v. State, 627 So.2d 1034 (Ala.Cr.App.1992), aff'd, 627 So.2d 1054 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994); Neelley v. State, 494 So.2d 669 (Ala.Cr.App. 1985), aff'd, 494 So.2d 697 (Ala.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987); Grayson v. State, 479 So.2d 69 (Ala.Cr.App.1984), aff'd, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). Thus, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have found none. Rule 45A, Ala. R.App. P.
Accordingly, the appellant's conviction and sentence of death by electrocution are hereby affirmed.
AFFIRMED.
All judges concur, except COBB, J., recuses.
NOTES
[1] On remand, pursuant to the directions of this court, the trial court vacated the appellant's convictions on Counts Two, Three, and Four because they stated alternate methods of proving burglary-murder. Thus, the appellant's burglary-murder conviction is based on Count One of the indictment.
[2] We note that the Advisory Committee's Notes to Rule 1101, Ala. R. Evid., effective January 1, 1996, state: "Traditionally, rules of evidence have been held not to govern sentencing ... proceedings except as otherwise provided by statute or rule of court. Rule 1101 ... is intended to continue that principle of inapplicability."
[3] The appellant's then-seven-year-old son testified at his trial. The prosecutor, claiming the child was "unavailable," read his former testimony into evidence at the sentencing hearing.